## STEVENS *v.* IRWIN, SHERIFF.

WHERE a vendee of personal property buys it *bona fide*, takes possession openly, and holds it in exclusive possession for a year or more, and afterwards puts the property into the possession of the vendor, as attorney in fact of the vendee, this qualified possession of the vendor does not, as matter of law, show the sale to be fraudulent, and void as against the creditors of the vendor.

Our Statute of Frauds (Act of 1850, sec. 15) was not intended to go beyond the extreme rule adopted by the Supreme Court of the United States and the English Courts, to wit: that retention of the possession of personal property by the vendor, after an absolute sale, is *per se* fraud. The word "actual" in the statute was designed simply to exclude a mere formal change of possession, and the word "continued" to exclude a mere temporary change. But the statute does not require that the vendor, under penalty of forfeiture of the goods, shall *never* have any control over or care of them.

All the statute requires is, that delivery must be made; the vendee must take *actual* possession; the possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee. The possession must be continuous—not taken to be surrendered back again—not formal, but substantial. But it need not necessarily continue indefinitely, when it is *bona fide* and openly taken, and is kept for such a length of time as to give general advertisement of the *status* of the property, and the claim to it by the vendee.

The facts in *Bacon* v. *Scannell* (9 Cal. 272) differ from those here; but the principle announced in that case is not law.

APPEAL from the Seventeenth District.

Action of replevin brought by Isaac Stevens against Edward Irwin, Sheriff of Sierra county, to recover possession of a number of horses and mules, hay, barley, saddles, etc., which the Sheriff had levied upon by virtue of an attachment in favor of *Treadwell & Co.* v. *B. C. Stevens*, brother of the plaintiff.

It appears by the evidence that in the year 1855, and until the spring of 1856, B. C. Stevens was the owner of a livery stable at Monte Cristo, Sierra county, and carried on the business of keeping livery stable; that in the spring of 1856, he became insolvent, being at that time indebted to Treadwell & Co., among others. There was a large amount of evidence on the question of fraud. In January, 1858, plaintiff left for the Atlantic States, where he still remains, leaving B. C. Stevens in possession of the stable and mules, under a power of attorney from plaintiff. B. C. Stevens remained in possession from the departure of plaintiff for the Atlantic States until June, 1858, when the same were levied upon by the defendant, as Sheriff.

Other facts are sufficiently stated by the Court.   The instructions to the jury are not given, because the case, as passed upon by the Court and jury, presents the question of law stated in the opinion of this Court, and to the full understanding of this question further facts are not material.   Defendant appeals.

*Wm. M. Stewart,* for Appellant, cited Wood's Dig. 107, sec. 15 ; *Hubbard* v. *Bogardus,* 10 Cal. 518 ; *Brown et al.* v. *Gorham,* 4 Id. 289 ; *Bacon* v. *Scannell,* 9 Id. 271 ; *Stewart* v. *Scannell,* 8 Id. 80 ; *Vance* v. *Boynton,* Id. 556 ; *Whitney* v. *Stock,* 8 Id. 514.

*R. H. Taylor and Kirkpatrick & Baldwin,* for Respondent, cited *Breckenridge* v. *Anderson,* 3 J. J. Marsh, 714; *Clark* v. *Moore,* 10 N. H. 236 ; *French* v. *Hall,* 9 Id. 134, 146 ; 6 Watts & Serg. [Pa.] 94; 13 Serg. & Rawle, 128, 131 ; *Dorsy* v. *Thrall,* 13 Vt. 281 ; *Farnsworth* v. *Shepherd,* 6 Id. 521 ; *Wilson* v. *Hooper,* 12 Id. 653 ; 3 Barr, 442 ; *Low* v. *New Haven,* 2 N. H. 13, and authorities there cited; 1 Sme. & M. 383 ; 11 Mass. 421 ; 2 Pick. 411 ; 2 Kent, 441.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

This was an action for the recovery of certain property levied on by defendant, as Sheriff, under process, as the property of one B. C. Stevens. The case was here before, and judgment was reversed on a question of law not affecting the merits.   Two verdicts and judgments have been had for plaintiff on the main question involved.   The proofs are conflicting, and it would require a very strong case to induce us to interfere with the action of the Court below in refusing a new trial.

1. This point is not much pressed by appellant.   It is not well taken.

2. The main ground insisted on by the appellant is, error in the instruction of the Court upon the question of fraud, which was the real matter before the jury.   It was claimed by the defendant that this property sued for (being mules, etc.) was really the property of one Benjamin Stevens, and that the pretended sale, insisted on as giving the ownership to Isaac, the plaintiff, was a sham.   It is said the proof shows that a part of this property was, some twelve or eighteen months before the levy, in the possession of Benjamin Stevens, who then transferred it, with the livery stable and property connected with the business, to Isaac, who went into possession, and remained ostensibly in the

Stevens *v.* Irwin.

control of the property for something more than a year, when he went to the Atlantic States, leaving Benjamin in possession, with a power of attorney to act as his agent; that Benjamin, though under color of this authority, resumed possession of these mules, etc., and that this resumption of possession, thus acquired, is fatal to the plaintiff's claim, under the fifteenth section of the Statute of Frauds, which requires an actual and continued change of possession as a necessary element of the validity of the title.    The appellant contends that the fact of this subsequent possession by the vendor, as matter of law, is of itself conclusive proof of fraud in the conveyance.    Unless the proposition can be maintained in this extent, as the record stands, the appellant cannot make good his assignment.

The section of the Statute of Frauds, the construction of which is thus involved, is in these words (Wood's Dig. 107) : " Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of things sold or assigned, shall be conclusive evidence of fraud as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith."

Upon no question of general jurisprudence has there been so much controversy and conflict as in the construction of the English Statutes of Fraud, and analagous statutes of the American States.    These conflicts have divided the bar and the bench, not only in England, but in this country; and there has been almost as much diversity in the same Courts, in the rulings of different, and sometimes the same Judges, as between those Courts and other tribunals.    This disagreement has been greater upon the question now before us—the effect of a retention of the possession of personal property by the vendor, after an absolute sale—than upon any other portion of the statute.    Two sects divided the judiciary upon this question, one holding that the retention was *per se* fraud; the other that it was only *prima facie* evidence of fraud, susceptible of explanation and rebuttal; and these sects have been split into numerous minor subdivisions, holding various and contradictory modifications and exceptions to the general doctrine.    Twyne's case, 3 Coke's R. 80, followed by *Edwards* v. *Harbin,* 2 Term R. 587, are leading cases, holding the first and most stringent of these rival propositions, and they were followed by the Supreme Court of the United

33

States in *Hamilton* v. *Russell*, 1 Cranch, 97 ; by the Supreme Court of New York, in *Sturdevant* v. *Bullard*, (afterwards overruled) 9 Johns. 339 ; 4 Binney, 258 ; 2 Hen. & Munf. 302, and other cases ; while the more liberal rule was adopted in most of the States of the Union.   In this controversy as to what the true common law rule is, the Legislature wisely adopted, by statute, the construction given by the Supreme Court of the United States, for this course had, at least, the advantage of giving to the State one uniform rule in all the Courts on this important subject.

But we apprehend that the Legislature never intended, by this statute, to go beyond the extreme rule adopted by the Supreme Court of the United States, and the English cases on which that rule rests. There was no reason of policy for such extension ; indeed, such extension might defeat, in some degree, the reason for adopting the Federal rule.   The rule, as defined by our statute, is almost in the language of that given in the cases which establish the rule in England.   It is true that some stress is laid on the words " *actual* and *continued* change of possession ; " but these words are suggested by the facts and principles of the decided cases referred to.   The word " actual " was designed to exclude the idea of a mere formal change of possession, and the word " continued " to exclude the idea of a mere temporary change.   But it never was the design of the statute to give such extension of meaning to this phrase, " continued change of possession," as to require, upon penalty of a forfeiture of the goods, that the vendor should *never* have any control over or use of them.   This construction, if made without exception, would lead to very unjust and very absurd results.   A vendor could never become trustee of the goods, without their being forfeited or liable for his debts.   If a livery stable keeper hired a horse to the original vendor, it would be liable for his debts ; or if a boarder came into a room, the furniture might be liable for his debts if he once owned it.   The " continued change of possession," then, does not mean a continuance for all time of this possession, or a perpetual exclusion of all use or control of the property by the original vendor.   A reasonable construction must be given to this language, in analogy to the doctrines of the Courts holding the general principles transcribed into the statute.   The delivery must be made of the property ; the vendee must take the *actual* possession ; that possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee.   It must be such as to give evidence to the world

of the claims of the new owner. He must, in other words, be in the usual relation to the property which owners of goods occupy to their property. This possession must be continuous—not taken to be surrendered back again—not formal, but substantial. But it need not necessarily continue indefinitely, when it is *bona fide* and openly taken, and is kept for such a length of time as to give general advertisement to the *status* of the property and the claim to it by the vendee.

To apply this principle to the facts here: If the vendee, Isaac Stevens, bought this property fairly, and took possession openly, and held it in exclusive possession for a year or more, though this property was found in the possession of Benjamin Stevens, the original vendor, a year or more afterwards, the latter being the attorney in fact of the vendee, this qualified possession of the vendor would not, as a matter of law, show the sale to be fraudulent and void. The cases cited on the brief of the respondent establish and maintain this proposition.

The facts in the case of *Bacon* v. *Scannell* (9 Cal. 272) are widely different from those here. It is true, the general reasoning of Mr. Justice Burnett in that case would seem to oppose the conclusions we have reached, but the circumstances of that case did not call for so general a statement as there made; and we cannot recognize the principle there announced as a correct exposition of the statute.

It is not necessary to notice the other points made by appellant. They do not seem to be supported by the record.

Judgment affirmed.