## JOHN WALDIE *v.* J. G. DOLL.

PLEDGEE OF AN UNDIVIDED HALF OF PROPERTY.—S. a wagon maker, and W. a blacksmith, entered into an arrangement for the building of wagons, by which S. was to do the woodwork, and W. the ironwork, and W. was also to furnish the materials for the woodwork, for which he was to have a lien as security on the interest of S. in the wagons. *Held,* that the contract constituted an hypothecation of the interest of S. in the wagons while they were being made, and that when the wagons came into the possession of W., he became a pledgee in possession thereof, and was entitled to retain such possession until paid.

POSSESSION OF PERSONAL PROPERTY.—Where two parties own wagons in common, and one pledges his half to the other for advances, if the pledgee keeps the wagons on his premises, and marks them with his name, and exercises control over them, the mere fact that the pledgor is painting them, does not show a surrender of possession by the bailee.

ERROR MUST BE SHOWN.—The appellate Court will not assume that the Court below committed error unless the record shows wherein, and one who alleges error must rely on the record to disclose it.

RULE OF DISTRICT COURT AS TO INSTRUCTIONS.—If there is a rule of the District Court requiring instructions to be handed to the Judge by a certain time in the progress of the trial, it is not error for the Court to refuse to give instructions not handed to the Judge in time.

READING INSTRUCTIONS TO THE JURY.—Instructions asked by counsel, and refused by the Court, should not be read in the hearing of the jury.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

The facts are stated in the opinion of the Court.

*George Cadwalader*, for Appellant.

*R. C. Clark*, and *George R. Moore*, for Respondent.

By the Court, CURREY, C. J.

On the 12th of November, 1864, J. G. Doll commenced an action in the District Court of the Sixth Judicial District against one J. P. Shaffer to recover the amount due on two promissory notes, and caused to be attached therein three wagons as security for the satisfaction of any judgment that he might recover in such action. Subsequently in the same month judgment was obtained in the suit against Shaffer for seven hundred and thirteen dollars, and thereafter an execution was issued thereon, and on the 8th of December of the same year the property attached was sold to Doll by the Sheriff of Sacramento County under and by virtue of the judgment and execution against Shaffer. The plaintiff, Waldie, claimed the wagons, and after they were sold and delivered to Doll demanded them of him, and upon his refusal to deliver the property in compliance with such demand, the plaintiff brought this action for their recovery, or their value in case the possession thereof could not be obtained, and for damages, etc.

The plaintiff's complaint consists of two counts. In one of them the plaintiff alleges that he was the owner and in pos-

session of the wagons at the time they came to the defendant's possession. In the other he alleges that he and Shaffer were the owners in common of certain personal property consisting of three wagons, and that Shaffer, being indebted to him in the sum of five hundred dollars with some interest thereon, pledged his interest in these wagons to the plaintiff to secure said indebtedness and the interest, and at the same time placed the property in the actual possession and under the exclusive control of the plaintiff, and also invested him with full power to sell and dispose of the same and to apply the proceeds arising therefrom to the payment of the amount due and to become due. In each count the property therein described is alleged to be of the value in the aggregate of one thousand dollars. Two of the wagons mentioned in the first count correspond in description with two of the wagons described in the second count, but it does not appear from the complaint that the two counts were intended to describe the same property, but from the whole complaint it is evident the plaintiff intended the second count as a statement of the cause of action on which he relied for a recovery.

The defendant's answer controverts most of the material allegations of the complaint. The defendant further answering avers that the property was seized and taken by the Sheriff under the writ of attachment and afterward came to the defendant's possession by purchase at the sale under the execution. And he alleges that when the wagons were so seized and taken by the Sheriff, Shaffer had the actual possession of them and was the owner of one half part thereof and so continued to be until they were sold by the Sheriff to the defendant, who by his purchase became the owner of one half of the property, and equally with the plaintiff became entitled to the possession of the same ; that immediately after he so purchased he offered to the plaintiff to recognize him as the owner of an undivided half of the wagons in common with himself. He then charges that the pretended pledging of the property was a fraudulent contrivance on the part of Shaffer to enable him, with the assistance of the plaintiff, to

cheat and defraud his creditors, and further that such pretended pledging was void as against the defendant for want of an actual delivery and change of the possession of the property or any part thereof. The issue joined was tried before a jury who rendered a verdict for the plaintiff on which judgment was entered.

The appeal is from the judgment and from an order refusing a new trial.

In October, 1862, Shaffer, who was a wagon maker, engaged in the business of making wagons at the shop of the plaintiff in the City of Sacramento. By an arrangement between the plaintiff and Shaffer, the latter was to do the woodwork, and the former, who was a blacksmith, was to do the ironwork necessary to the construction of the wagons, after which it was a part of the business of Shaffer to paint them. Shaffer had not the means with which to procure the materials necessary for his part of the work; and the result was, that plaintiff furnished timber and money to Shaffer for the purpose, upon the agreement that plaintiff should have and hold the wagons until, by the moneys arising from sales thereof, he should be reimbursed for his advancements made on behalf of Shaffer. The agreement between the parties, as testified to by the plaintiff, was, that Shaffer should carry on the wagon making business and the plaintiff the blacksmithing business, and that Shaffer should have for his own use and benefit the business of repairing wagons, and that the new wagons to be built by their joint labor should belong to the plaintiff until he was fully paid the money due him. The plaintiff further testified that he advanced to Shaffer five hundred dollars' worth of timber in October, 1862, and thereafter all the additional timber used by him in the business. Some time before the attachment was levied, Shaffer sold out his interest in the wagons to one Keseberg, when he instructed the plaintiff that if the wagons were sold for more than was due him, that then the plaintiff should pay the excess belonging to Shaffer to Keseberg, and to this the plaintiff assented. Shaffer testified in effect that he was to have a half interest in

the wagons when the materials of which they were made were paid for, and that from his half the five hundred dollars due the plaintiff was to be deducted. The evidence of the witnesses is exceedingly loose in respect to the exact relation which the parties to this wagon making business sustained to each other by their original agreement or understanding. The theory upon which the action was tried was, that Shaffer and Waldie, in the first place, contemplated by their arrangement that they should own in common the wagons which they might make, and so the respective attorneys of the parties to this action seemed in their pleadings to regard the position of the contracting parties, and so we shall regard it. Then the substance and effect of the arrangement between the plaintiff and Shaffer was, that the wagons in question should, to the extent of Shaffer's interest therein, stand pledged to the plaintiff, as soon as manufactured, as security for the money due and to become due. This arrangement was in its nature a contract for the hypothecation of the wagons as they should be brought into being by the labor and skill of the workmen; but as soon as they came into existence and passed into the possession of the plaintiff, his right as pledgee of Shaffer's half attached. So it was held in the case of *Macomber* v. *Parker*, 14 Pick. 497, where a brickmaker stipulated with the lessees of a brick yard, in which he manufactured bricks, that the lessees should retain the bricks to be made there as security for their advances to him. (Story on Bail, Secs. 290, 294.)

As between the plaintiff and Shaffer, there can be no question as to which was entitled to the possession of the wagons and to the proceeds of sales thereof in the first instance. The plaintiff had the right to their possession, and the authority to sell them and to appropriate from the money arising from the half which stood pledged, sufficient, if it amounted to that, to pay him the sum due. Then the main question to be considered is whether the possession which the plaintiff had of the property when it was attached was open and exclusive, and such as to protect it from the creditor of Shaffer. We are of

opinion that it was.   At that time the wagons had been in the exclusive possession of the plaintiff for at least a month. They were marked with the plaintiff's name as maker, and were kept by him on his own premises.   The plaintiff sustained the relation to them which owners usually occupy to their property.   His possession was open and well calculated to give notice to everybody concerned that it was substantial. Though Shaffer was engaged at the time they were seized by the Sheriff in painting one of the wagons, that fact when considered in its relation to the subject and to the circumstances in evidence, does not show any surrender on the part of the plaintiff of the actual possession of the property to Shaffer. We think the case in principle falls closely within the rule laid down in *Stevens* v. *Irwin*, 15 Cal. 506.

The appellant complains that the plaintiff was permitted to produce evidence to the effect that Shaffer was to own no interest in the wagons until the plaintiff was paid for his advance, on the ground that such evidence was in contradiction of the complaint that Shaffer, as the owner of an undivided half of the wagons, pledged his interest therein to the plaintiff to secure the debt due him.   The testimony to which the appellant refers as erroneously admitted does not even tend to prove the fact that Shaffer was to own no interest in the wagons before the plaintiff's advances were paid.   On the contrary, it tends to establish the allegations of the second count of the complaint, and was therefore admissible.

There is nothing in the record to support the error assigned on the part of the appellant, on the ground that he was not allowed to show by Shaffer, on his cross examination, that he transferred the wagons to the plaintiff in order to cheat his creditors.

During the argument of the cause before the jury, the Judge said that as he was then advised " he should hold that the Statute of Frauds did not conflict with an arrangement such as was entered into—that the statute, as near as he could remember, did not in cases of this kind, where the pledger had a half interest and the pledgee was the owner of the

other half, require that the pledger should give up and abandon it—leave the building in which the property was located." To this the defendant excepted, and on this appeal assigns this remark of the Judge as erroneous. What was said by counsel that rendered what the Judge so said pertinent to the issue, we are not advised by the record, or otherwise. As the matter stands it is impossible to say that it was of such a character as could have done harm to the defendant. It is well understood that this Court will not assume that the Court below committed an error unless the record shows wherein; and it is equally well understood that the party who alleges error must rely on the record as affirmatively disclosing it. We are not satisfied that the remark was not entirely true, though it would seem to be, standing alone, without any pertinent application to anything before the Court or jury.

The remaining point to be considered is, that the Court refused to give two instructions to the jury requested on behalf of the defendant. These requested instructions are set forth in the record. If it be assumed that they are a correct statement of legal propositions involved in the controversy, it does not appear that they were read in the hearing of the jury. We are not to presume that they were, because, to have read them in the hearing of the jury before they were passed upon by the Court, would have been an improper practice; and even after they were passed upon by the Court, it would have been improper to have allowed the jury to know what they were, unless given to them by the Court. These requested instructions were refused for two reasons, as stated by the Judge in writing as follows: "First, that the same are not law; and second, that under the rule of the Court they are not asked in time." If either of the reasons assigned by the Judge for refusing to instruct the jury as requested be valid, the refusal cannot be alleged as error. Without saying whether the requested instructions were good law, or otherwise, we think the Court was justified in rejecting them, because they were not sub-

mitted as required by a rule of the Court. (*People* v. *Sears*, 18 Cal. 635.)

The judgment must be and is hereby affirmed.