[S. F. No. 883.   Department One.—December 29, 1898.]

HENRY C. GEORGE, Respondent, v. HENRY PIERCE et al., Defendants.   HENRY PIERCE, Appellant.

PLEDGE—ASSIGNMENT BY PLEDGOR FOR BENEFIT OF CREDITORS—CONVERSION BY ASSIGNEE—SUFFICIENCY OF CHANGE OF POSSESSION.—The assignee for the benefit of creditors of a pledgor stands in the shoes of the pledgor, and cannot rightfully take possession of the pledged property, if the rights of the pledgee cannot be questioned by the pledgor.  Such an assignee cannot attack the sufficiency of the change of possession of the pledgee, as against the creditors of the pledgor, if it is sufficient as against the pledgor.

ID.—EXECUTION SALE BY CREDITORS OF PLEDGOR—TRANSFER TO ASSIGNEE.— The creditors of the pledgor are authorized to attack the sufficiency of the change of possession from the pledgor to the pledgee; and if there was not actual and continued change of possession, sufficient as against them, may levy upon the pledged property as the property of the pledgor, and sell the same under execution, and may thereafter transfer the title to the assignee.

ID.—CHANGE OF POSSESSION OF PLEDGED PROPERTY — SECRET LIEN — WRITTEN INSTRUMENT.—To sustain the validity of a pledge as against the creditors of the pledgor there must be an open and visible change of custody of the property.  A secret lien is abhorrent to the law, and cannot be supported; nor can such secret lien be helped by any written instruments of transfer or lease of the pledged property, as against the creditors of the pledgor, who have the right to look only to the visible acts of the parties, and against whom a visible, actual, and continued change of possession must be had.

ID.—ACTION FOR CONVERSION—SUPPLEMENTAL ANSWER—TITLE ACQUIRED PENDING SUIT—MITIGATION OF DAMAGES.—In an action for the conversion of pledged property, title acquired by the defendant pending the suit, which is pleaded by way of supplemental answer is material and relevant in mitigation of damages to the extent of the value of the property at the time of trial.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a new trial.   J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

T. M. Osmont, for Appellant.

Olney & Olney, and Warren Olney, for Respondent.

GAROUTTE, J.—Plaintiff, claiming to be pledgeholder brings this action for conversion of the pledged property. Some of the facts presented by the record are as follows: De Long owned a large tract of land in Marin county, upon which land he kept a great number of dairy cows. He borrowed twenty-five thousand dollars from Cowell and gave these dairy cows into the possession of George, the plaintiff herein, as pledgeholder, to secure the lien. During the life of the pledge De Long, under the provisions of the Civil Code, made an assignment for the benefit of creditors, and Pierce, the defendant, became the assignee under such assignment. Thereafter, deeming the proceedings pertaining to the pledge void, he took possession of the cows. The pledgeholder thereupon brought the present action in conversion for damages. One herd of these cows is involved in the present case. Other cases are pending, resting largely upon similar facts, as to the remaining herds.

In *Francisco v. Aguirre*, 94 Cal. 180, it was held that an assignee such as this defendant Pierce stood in the shoes of his assignor. Hence, if De Long had no right to take the possession of these cows from the pledgeholder, then Pierce had no right to do so, and his taking would be wrongful and a conversion. Pierce, in taking possession of the cattle, appears to have acted upon the theory that the possession of George as pledgeholder was not such a possession as the Civil Code contemplated, and, therefore, no lien rested upon the cattle, as against the assignee for the benefit of creditors. This position is untenable for the reason that the sufficiency of George's possession was a matter that De Long, the pledgor, could not attack. Measuring and testing the case from this standpoint, the judgment against Pierce finds full justification in the law. But at this point complications present themselves by reason of the following facts:

While this action was pending certain creditors of De Long secured a judgment against him, levied upon these cows by execution, and sold them. The title under this sale thereafter vested in Pierce for the benefit of the creditors, by reason of a transfer from the purchaser. By supplemental answer Pierce set out these facts as a defense to the action. The trial court refused to admit evidence tending to establish them, and this refusal is assigned as error. An important question meets us

at the threshold of the investigation. Did Pierce by the action of the creditors get title to the property? There is no question but that the creditors, after the assignment of De Long, had the right to prosecute their respective claims against him and levy executions upon this property to satisfy judgments recovered. *Francisco v. Aguirre, supra,* is directly to this point. It follows that title to the property passed to Pierce as a result of the action if the property was subject to execution and sale at the hands of the creditors. It certainly was so subject if the transfer by De Long of the possession of the cattle to the pledgeholder, George, plaintiff in this action, was not accompanied by an actual and continued change of possession. For any other kind or character of transfer to the pledgeholder would leave the property subject to the satisfaction of the debts of De Long's creditors, regardless of Cowell's lien. We have examined the record with extreme care, and have failed to find evidence supporting a finding of fact to the effect that there was an actual and continued change of possession from De Long to George. To sustain the validity of a pledge, as against creditors of the pledgor, there must be an open and visible change of custody of the property. Secret liens of all kinds are abhorrent to the law, and for these reasons are not supported. Let us look at the facts surrounding this transfer.

When George went upon the De Long ranch to take possession of the cattle he found matters in this condition: De Long owned the ranch and the cattle. Matoni, the codefendant, lived upon that particular part of the ranch where these cattle grazed. He cared for them and milked them. The milk was given to De Long, who sold it and divided the net proceeds with Matoni. Such was the present situation at the time of the delivery of the cows to George. Upon that day the following events took place: Matoni, under orders from De Long, drove the stock into the corral from the pasture land. Then George stood upon one side of the gate and De Long upon the other, and as the cows slowly passed from the corral through the gate back to the same pasture land from which they had been driven, they counted them. A bill of sale of the stock was given by De Long to George, and George thereupon gave a written lease to Matoni of the cows for the rental of thirty dollars per month. These

things having taken place, George rode away, and never saw the cows but once again. The relations between De Long and Matoni as to the cows continued exactly the same after this eventful day as before, with the single exception that Matoni thereafter refused to give De Long on demand any of the cows for beef, which had been the past custom. We believe we have stated all the material facts bearing upon the transfer of the possession of the cows from De Long to George, and, weighing and measuring these facts, they entirely fail to disclose that actual and continued change of possession demanded by the statute in cases of pledge in order that creditors of the pledgor may not successfully attack the transaction.

The transaction pertaining to this transfer was enveloped in writings, which was well enough for the purpose of evidencing the rights of the respective parties to it; but the statute which deals with a change of possession sufficient to defeat creditors does not contemplate writings, but acts. No writings pertaining to a transfer of personal property, regardless of their number or character, can create an actual and continued change of possession as to creditors of the pledgor. Acts only can do it. A visible, actual, continued change of possession must be had, and the law will be satisfied with nothing else. Writings can never accomplish these results. In the investigation of the question now before us the bill of sale from De Long to George goes for naught. The lease from De Long to Matoni of the land upon which these cows had previously pastured, and upon which they were subsequently to pasture, is an unimportant circumstance. The lease of the cattle by George to Matoni at a rental of thirty dollars per month in no way tends to prove either an actual or a continued change of possession to George. Let us, then, see the surrounding conditions after George, the pledgeholder, mounted his horse and rode away. The cows still fed on the same pasture lands, and were still cared for and milked by the same man. The increase was still divided between De Long and Matoni; the dairyman. The milk was turned over by Matoni to De Long and disposed of by him the same as before, the net profits being divided as in the past. There was not only no real change of the possession of the cattle, but absolutely no apparent change. Everything went on exactly as it had gone on in the past. Under these circumstances the transfer to the

pledgeholder was void as to creditors, and the sale under execution carried good title, which title was in Pierce, the defendant, at the date of the trial.

It is claimed upon the part of plaintiff that Pierce's title to the cattle under the execution sale is only such title as De Long had, and therefore he stands as De Long stands; but there is this material difference: De Long had title to the cattle subject to the pledgeholder's lien. Pierce had title relieved of such lien, and this resulted from the levy and sale of the cattle by the creditors.

The title to the property alleged to have been converted being in Pierce at the date of the trial, was that fact a defense to the action in conversion? In other words, plaintiff having a perfect cause of action for conversion when his complaint was filed, has that cause of action been abated by a subsequent acquirement of legal title of the property by the party guilty of the conversion? Without going into this question *in extenso*, it is sufficient to say that, if the facts set out by the supplemental answer in this case are not a complete bar to the action, they are at least material and relevant as tending in mitigation of damages. At least it must be that under such conditions the damages claimed by plaintiff should be mitigated to the extent of the value of the cattle at the time of the trial. For these reasons the judgment-roll in the action of the creditors against De Long should have been admitted in evidence.

The contention of appellant that the complaint does not state a cause of action has no merit. We are also satisfied with the trial court's position as to the splitting of the various causes of action. The objection to the prosecution of the motion for a new trial, based upon laches, is not well taken.

For the foregoing reasons it is ordered that the order denying a new trial be reversed and the cause remanded.

Van Fleet, J., and Harrison, J., concurred.

A petition for rehearing having been filed and denied, the following opinion was rendered thereon on the 30th of January, 1899:

GAROUTTE, J.—In view of the citation of a number of new cases in the petition for a rehearing, wherein it is claimed

that the law is so declared that under the facts of the present case the conclusion of the Department is wrong, the following is submitted:

. In *Stevens v. Irwin*, 15 Cal. 503, 76 Am. Dec. 500, the court said as to the true construction of this provision of the statute of frauds: "A delivery must be made of the property; the vendee must take the actual possession; that possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee. It must be such as to give evidence to the world of the claims of the new owner. He must, in other words, be in the usual relation to the property which owners of goods occupy to their property. This possession must be continuous—not taken to be surrendered back again; not formal, but substantial." This has been the law from that day to this day, unquestioned and unchallenged by bench or bar. Hundreds of cases have stood or fallen tested by this canon of construction. In *Rothschild v. Swope*, 116 Cal. 678, we find the statement: "This court thirty-seven years ago in *Stevens v. Irwin, supra,* gave an interpretation to the statute which has stood unassailed ever since." That case is immediately preceded by *Levy v. Scott*, 115 Cal. 48, and *Byxbee v. Dewey* (Cal., 1897), 47 Pac. Rep. 52, where *Stevens v. Irwin, supra,* is cited and approved. Indeed at every milestone in the long road leading from volume 15 of the California Reports to volume 121 some case may be found indorsing either by title or in principle the doctrine of *Stevens v. Irwin, supra,* upon the sufficient delivery of personal property as against the claims of attaching creditors. As illustrative of these cases we cite *Engles v. Marshall*, 19 Cal. 329; *Cahoon v. Marshall*, 25 Cal. 201; *Godchaux v. Mulford*, 26 Cal. 316, 323; 85 Am. Dec. 178; *Woods v. Bugbey*, 29 Cal. 472; *Hesthal v. Myles*, 53 Cal. 625, 626; *Bell v. McLellan*, 67 Cal. 283; *Kelly v. Murphy*, 70 Cal. 563; *Bunting v. Saltz*, 84 Cal. 172; *Etchepare v. Aguirre*, 91 Cal. 288, 295; 25 Am. St. Rep. 180; *Murphy v. Mulgrew*, 102 Cal. 547; 41 Am. St. Rep. 200.

Upon examination of the aforesaid authorities it will be found that the law of *Stevens v. Irwin, supra,* stands impregnable and unassailable. In some exceptional cases presenting hard law the court, in its construction and interpretation of the *facts,* may have leaned a little too far toward the administration of sub-

stantial justice. But beyond this it has never gone, and the law of this question stands to-day exactly as it did thirty-eight years ago.