L. D. OLIVER v. THE CINCINNATI, COLUMBUS & WOOSTER TURNPIKE COMPANY.*

It is the privilege and duty of an incorporated company when it has reason to and does believe a transfer of stock to be illegal, to refuse record upon the books until judicially determined; but it so acts at its peril, and must be justified, if at all, by the result of the judicial inquiry.

HOSEA, J.

The facts of this case material to the issue are as follows:

On December 29, 1891, Mrs. Sarah J. Lewis, through her attorney, R. H. Langdale, loaned to Charles F. Stites $1,000, evidenced by a six months' note, and upon a renewal of the note at maturity, Stites delivered to Langdale a certificate for forty-four shares of the capital stock of the defendant company as security, together with other collaterals, including a note of one Bassett for $350.

The note and collaterals remained with Langdale until January 5, 1899, when the note was sold by Langdale for Mrs. Lewis to W. N. Stites for $75, and the note and collaterals delivered, interest due on the note having been paid and the principal reduced to about that sum by various payments from time to time.

* Affirmed by Supreme Court, 74 O. St., 386.

It appears that in the original delivery of the stock to Langdale as collateral on the note to Mrs. Lewis, no endorsement was made by Charles F. Stites upon the certificate, and neither of these parties could explain whether a separate power of attorney was given or whether the want of endorsement was an oversight. Nor was any endorsement made upon the certificate when transferred to W. N. Stites; but, on July 5, 1902, W. N. Stites sold to Oliver, the plaintiff, forty shares of the stock, and on that date, Charles F. Stites endorsed upon the back of the certificate authority to the secretary of the company to make transfers on the books accordingly—forty shares to Oliver and four shares to W. N. Stites. Upon Oliver's demand to have his forty shares transferred and issued, the company, by its secretary, refused upon the grounds following, alleged in its answer, which it pleads in justification, namely:

That on April 7, 1897, Charles F. Stites, being then the owner of said stock, made a deed of assignment for the benefit of creditors to Frank S. Hastings, whereby said stock became the property of said Hastings in trust for creditors, and was appraised and inventoried as part of the assets of Charles F. Stites; that said Hastings died before the estate was fully administered, and was succeeded by A. E. Painter as trustee, and that said stock was not publicly sold by Hastings and is now the property of Painter, trustee (although Painter himself makes no claim).

It is in evidence that Charles F. Stites paid over the money for the purchase of his note, and received the collaterals from Langdale, acting as agent for his son, W. N. Stites, who furnished the money; and Langdale testifies that he so understood the transaction at the time. The stock was sold to Oliver by W. N. Stites, through B. H. Stites, attorney (a brother of W. N. and son of Charles F.), who made delivery to Oliver in his brother's behalf; and the endorsement by Charles F. was made at that time. B. H. Stites testifies that he told the assignee, Hastings, of the stock pledged in Langdale's hands as collateral, and also of the purchase of the note and stock by his brother W. N.

Hastings, assignee, died in 1901, and upon the appoint-

ment of Painter as his successor, witness advised him of these transactions, and Painter made no claim of ownership. Witness also testified that he acted as one of the attorneys for the assigned estate, and that Hastings proposed to surrender all claim against the stock in the hands of W. N. Stites in consideration of a cash payment of $10, the surrender and cancellation of the C. F. Stites note and the Bassett collateral note, all of which was done; and upon delivery of these notes and the cash payment, the assignee, Hastings, gave a written receipt for the notes and cash a consideration for the sale of all interest in the forty-four shares to W. N. Stites, which receipt signed by Hastings is in evidence.

The inventory and appraisement of the estate filed in the insolvency court, May 28, 1897, show real estate, $96,795, and personal estate (including the forty-four shares of stock of the C. C. & W. Turnpike Co., appraised at $396), $657 —a total of $97,452—while the schedule of debts and liabilities (including a debt to Mrs. Sarah J. Lewis of $229 and another of $2,000) aggregates $53,057.89.

An account filed by Hastings, assignee, February 13, 1901, and confirmed March, 1901, shows a credit to W. N. Stites of $10 cash received, which corresponds with the assignee's receipt to W. N. Stites and must be taken as relating to the sale of the stock in question.

The contention in the case centers upon the legal status of the stock represented by the certificate delivered by Charles F. Stites to Langdale as collateral security for the note to Mrs. Lewis. The defendant company claims that by delivery of the unendorsed certificate, the transaction amounted at most to a mere mortgage, and that the *title* to the stock passed to Hastings, the assignee; and consequently Oliver derived no valid title, inasmuch as there was no *public* sale by the assignee. The proposition rests upon the essential difference between a "pledge" and a "mortgage," in that a pledge passes title, and the mortgage does not; that is to say, to constitute a valid pledge, the possession must actually pass out of the pledgor, while in the case of a mortgage it need not.

There is some confusion in the decisions along these lines, with respect to "stock," which is an intangible and undivided proprietary interest in property, and chattel property itself which is tangible. In the latter case, possession of the *corpus* is *prima facie* evidence of title because it is visible and tangible; while the former must necessarily rest upon something else as a token of the ownership, to-wit, a paper certificate of the trustee or custodian, which must, upon transfer, carry with it some evidence of intention.

The books generally agree that a certificate of stock possesses some of the legal attributes of a note drawn to order; and a note or bond payable to order may be transferred without indorsement, the transferee taking thereby an equitable title. Daniel on Neg. Instr., 664a.

"If by mistake, accident or fraud, a note has been omitted to be endorsed upon transfer, where it was intended that it should be, the party may be compelled by a court of equity to make the endorsements, and in case of death, the executor will be compellable to make it. The assignee of a bankrupt, under like circumstances, may be compelled to make endorsement of a note transferred before bankruptcy." Story on Prom. Notes, 120.

It is the prerogative and duty of a court of equity to look through the forms of transactions to the substance. The testimony here clearly shows that in delivering the certificate of stock to Langdale, it was the intention of Charles F. Stites to make a valid pledge of the stock represented thereby. Whether a separate power was given with it, and subsequently lost, or the endorsement of the certificate omitted by mere oversight, neither Stites nor Langdale can now remember; but the fact appears that both supposed it was properly transferred, and dealt with it accordingly through many years without discovering any error. In fact, the testimony leads to the conclusion that the discovery was made only when the stock was sold to Oliver, the present plaintiff, when the endorsement being called for was made by Charles F. Stites.

It is also in evidence, inferentially at least, that Hastings, the assignee, shared the same impression, as appears from

his mode of dealing with the stock, and particularly from his receipt, which is as follows:

"MARCH 31, 1900.

"Received of W. N. Stites, ten dollars ($10), balance from sale of forty-four (44) of Cincinnati, Columbus & Wooster Turnpike Company's stock, after. payment of a certain promissory note given by Charles F. Stites, to Sarah J. Lewis for one thousand dollars ($1,000), dated June 9, 1902, and subsequently purchased by W. N. Stites, for the payment of which said stock was held, together with a note given by C. F. Bassett to Charles F. Stites for three hundred and fifty dollars ($350) as collateral security. Said notes have been surrendered to the undersigned.

"F. S. HASTINGS, *Assignee.*"

The stock certificate was never in the hands of the assignee; and it is in evidence that he knew of its possession by Langdale at and from the date of the assignment; so that the fact of placing the stock in his inventory and appraisement must be taken as a memorandum not inconsistent with his belief that he acquired as assignee merely the residual right of a pledgor; and such unquestionably was the limit of his interest as assignee.

Under these circumstances, the transfer of the certificate to Langdale, carried a title which a court of equity could recognize and enforce by compelling the assignee to complete by endorsement. But the assignee could be compelled, simply because of the obligation that rested upon Stites. The endorsement, subsequently made by Stites, carried with it no new title, but was simply the formal completion of the old, the mere clerical correction of a mistake. The assignment of residual rights for benefit of creditors did not deprive the assignee of the power to correct a mere mistake; and in the ultimate approval and concurrence by the assignee, there was no wrong done to creditors.

The assignee had a right to confirm the pledgor's waiver and assent to the sale to W. N. Stites, particularly as he evidently regarded the surrender of the Lewis note, and the

Bassett note, together with the cash payment, as a fair consideration in behalf of creditors for the release of claims on his part. 22d Mont., 354, *Thompson Co.* v. *Durfee.*

Whatever may have been the formal irregularities of these transactions, no fraudulent purpose appears, and the sale of the collateral after maturity of the debt, though not public, undoubtedly carried a title that could only be impeached by the pledgor or his assignee; and the subsequent waiver by both the parties cured any defect arising out of want of notice. The sale by Langdale was a good transfer of title subject to the pledgor's rights. 81 Ala., 318, *Brent* v. *Miller.*

And the subsequent waiver by the pledgor, his assignee, was in effect a valid ratification. 58 O. St., 598, *Glidden* v. *Bank;* 123 Cal., 172, *George* v. *Pierce.*

To the same effect, in principle, see 11 Bull., 72; 26 O. St., 638; 52 O. St., 499; *Jelke* v. *Goldsmith's Adm'r;* 94 U. S., 739, *Jerome* v. *McCarter;* 2 N. Y. 443, *Wilson* v. *Little;* 37 O. St., 208, *Dayton Bank* v. *Merchants Bank.*

The case of *George* v. *Pierce,* 123 Cal., 172, is instructive in connection, as showing that an assignee for the benefit of creditors stands in the shoes of the pledgor, and can not rightfully take possession of pledged property, if the rights of pledgee can not be questioned by pledgor, that is to say, that the assignee can not attack the sufficiency of the transfer to pledgee if the pledgor could not.

The case also holds, substantially, that actual and continued change of possession of · the subject of pledge is sufficient as against creditors of pledgor. In brief, as against them, the open and visible custody of property is sufficient to sustain the validity of the pledge. See also: 2d Story's Eq., 1047; 4 N. P., 218, *Lawler* v. *Kell, Ex.,* 21 O. S., 221; *National Bank* v. *Railway;* Jones on Pledges, etc., Section 423.

Undoubtedly it is the privilege and duty of a corporate company where not satisfied of the legality of a transfer to refuse to make it upon the books until the matter is judicially determined. It also acts at its peril, and must be justified, if at all, by the result.

In the present case, I am satisfied that Oliver (and, incidentally, W. N. Stites) acquired a good title to the stock in controversy, and are entitled to the relief demanded, and decree will be entered accordingly.

Decree for plaintiff; each party, under the circumstances of the case, to pay his own costs.

*Burch & Johnson,* for Oliver.

*Harmon, Colston, Goldsmith & Hoadly,* for Turnpike Company.