[S. F. No. 3752.   In Bank.—April 28, 1908.]

ANTONE GEORGE SEQUEIRA, Respondent, v. J. D. COLLINS and C. AUG. WEIHE, Appellants.

APPEAL FROM JUDGMENT—WANT OF JURISDICTION—DISMISSAL.—An appeal from a judgment taken more than six months after its entry must be dismissed for want of jurisdiction.

ACTION FOR CONVERSION OF BRICKS — ATTACHMENT — DEMAND UPON SHERIFF — WANT OF OWNERSHIP — TRANSFER AS SECURITY — CONTRACT FOR PLEDGE—POSSESSION.—An action for the conversion of bricks attached by the sheriff at suit of a former owner of the property on which the bricks were burned, for unpaid purchase money, cannot be maintained, where plaintiff was not the owner of the bricks attached, and did not have possession thereof when demand was made upon the sheriff for return thereof, but merely held a transfer of the owner's interest, and of bricks made and to be made, as security for advances, and for an interest in the bricks when sold, which was in effect a contract for a pledge not consummated by delivery and actual change of possession of the bricks made, as required by section 3440 of the Civil Code.

ID.—CONSTRUCTION OF CODE—TRANSFER OF PROPERTY NOT IN EXISTENCE —PLEDGE OF EXISTING PROPERTY.—Section 3440 of the Civil Code does not apply to a transfer of property not in existence as security; but when the property comes into existence, under a contract for a pledge thereof, that section applies and the delivery and actual and continued and open change of possession of the pledged property, must be the same as is required in case of sales thereof.

ID.—RETENTION OF POSSESSION AND CONTROL BY TRANSFERRER OR PLEDGOR.—The retention of the possession and control by the transferrer or pledgor of personal property, after the transfer and pledge, without doing anything to indicate an intention to pass that control and dominion to the transferee or pledgee, is inconsistent with an actual possession in the transferee or pledgee, and cannot justify a finding thereof, as against an attaching creditor.

ID.—FINDING UNSUPPORTED BY CONCLUSIONS OF PLEDGEE.—The testimony of the pledgee to general statements that he had possession of the bricks and visited the premises, and gave directions to the men engaged in burning the same, is insufficient to show a change of possession, his general statement being his mere conclusions as to possession and it appearing that the pledgor maintained the control and dominion over the bricks without words indicating an intention to change it.

ID.—CHANGE OF POSSESSION OF BULKY PROPERTY.—Though it is not essential that bulky property should be removed from the premises in order to make a change of possession, yet it is essential that

there shall be an expression of the intention of the transferrer to pass the possession and dominion thereof to the transferee.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

H. U. Brandenstein, and Stanton L. Carter, for Appellants.

L. L. Cory, for Respondent.

SLOSS, J.—This is an action to recover damages for the conversion of six hundred and forty thousand bricks alleged to be of the value of four thousand dollars. The plaintiff recovered judgment for three thousand one hundred dollars and the defendants appeal from the judgment and from an order denying their motion for a new trial. The notice of appeal from the judgment was served and filed more than six months after the entry of judgment, and therefore conferred no jurisdiction on the appellate court to entertain this appeal.

The brick in question were in two kilns standing upon land in Fresno County. The defendant Weihe commenced an action against one Spinney to recover four thousand dollars with interest and costs and in that action caused a writ of attachment to be issued and placed in the hands of defendant Collins, the sheriff of Fresno County, for levy. Pursuant to this writ and to the instructions given by Weihe, Collins attached and took into his possession the two kilns of brick. The plaintiff, claiming to be the owner and entitled to the possession of the attached property, served upon the sheriff a demand for the release of the attachment, and, his demand being refused, he instituted this action.

The main question between the parties is whether certain transactions had between Spinney and the plaintiff prior to the levy of the writ of attachment operated to transfer to the plaintiff an interest in the brick which he could assert as against an attaching creditor. It appears without controversy that the land upon which the kilns were standing had originally belonged to defendant Weihe. In August, 1897, Weihe made an oral agreement with Spinney whereby it was agreed that Spinney should purchase from Weihe the land in ques-

tion for the sum of four thousand dollars with interest, payable in annual installments of one thousand dollars each. Spinney went into possession of the land under this agreement and remained in possession until after the levy of the writ of attachment. In 1901 Spinney commenced the manufacture of the brick in question, the material therefor being taken from the land. In May, 1901, some of the brick in one of the kilns being then in place but not yet burnt, he made an agreement with Sequeira, the plaintiff, whereby the latter agreed to advance the money necessary for the making of the brick. Two written instruments were executed. One of these purported to transfer to Sequeira all of Spinney's right, title, and interest in and to the contract with Weihe for the purchase of the land, and also his right, title, and interest in and to the brick made and to be made thereon. The other, after reciting the transfer, provided that it "is made as security for the performance on the part of the said first party (Spinney) of the agreement herein mentioned and to secure to said second party (Sequeira) all sums due and in any manner to become due from said first party to second party." By this writing, Sequeira agreed to advance, for the making of the brick, such sums as he might "deem best," and was to receive interest on all sums advanced, and one half of the net profits realized from the sale of the brick. The agreement in question further provided that Sequeira was to be and remain the owner of all brick made, and entitled to its possession until payment of all sums due him.

There is no room for controversy as to the legal effect of these instruments. While they purport to transfer the property, the transfer is plainly made as security, and operated to vest in the plaintiff only a lien. So far as the bricks are concerned, the writings are to be viewed as a contract for the creation of a pledge. (Civ. Code, sec. 2988.)

Sequeira made advances from time to time to pay for the expense of preparing, manufacturing, and burning the brick, his advances amounting in all to three thousand two hundred and seventy dollars. Spinney completed the moulding and laying of the brick in the first kiln, laid a second kiln, and proceeded to burn both. One of the kilns was finished in August and the other in September, 1901. The attachment was levied on the sixteenth day of April, 1902.

It is contended by the appellants that there had been no such "immediate delivery" or "actual and continued change of possession" of the property transferred, as is required by section 3440 of the Civil Code, to make the transfer valid as against a creditor of the transferrer. In this connection the court found "that said bricks were not in existence at the time the said agreements were so entered into and executed, and thereafter and long prior to this action and since said bricks were manufactured, the plaintiff took possession thereof, and ever since maintained the possession thereof down to the time when the defendant J. D. Collins took possession thereof in pursuance of the writ of attachment herein referred to." Section 3440, above referred to, requires a transfer of personal property to be accompanied by an immediate delivery and followed by an actual and continued change of possession, "if made by a person having at the time the possession or control of the property." If the property is not in existence at the time of the transfer it is obviously impossible that it should be in the possession and control of the transferrer, and the statute by its terms excepts transfers of such property from the requirement of immediate delivery. There is evidence here that at the time of the transfer only the first arch in one kiln had been laid and that this arch contained only eighteen thousand brick, none of which had been burned. We think this clearly brings the case within the exception of the statute and that no immediate delivery was required in order to make the transfer valid. (*Newell* v. *Desmond,* 74 Cal. 46, [15 Pac. 369].)

But, apart from the question of an immediate delivery, it was essential, in order to vest in plaintiff an interest in the property which would entitle him to hold it as against a creditor of Spinney, that he should have taken possession and held the bricks. The instruments under which the plaintiff claimed amounted, as has been said, to no more than a pledge of the brick. "A pledge is a deposit of personal property as security (Civ. Code, sec. 2986), and is dependent on possession, and is not valid until the property is delivered to the pledgee. (Civ. Code, sec. 2988.) The delivery must be as complete as is required in case of sales of personal property by section 3440 of the Civil Code, and change of possession must be continuous and open." (*Lilienthal* v. *Ballou,* 125 Cal. 183, [57 Pac. 897].)

The testimony relied upon to support the finding that plaintiff took and maintained possession is, in the main, that of the plaintiff himself. He stated that he took possession of the brick and always remained in possession of them until they were seized by the sheriff; that he went out to the land on which the bricks were being made "right along," sometimes at night, sometimes in the morning; that when there he would look around to see that everything was going along all right; that he went out every day during some weeks, and twice or three times a week at other times, sometimes staying and working on the premises all day; that he was there every night while the second kiln was being burnt; but that sometimes he did not go there for a month. That he was in charge of the brick. He employed some men to work on the kilns, but this was at the request of Spinney. He instructed the men not to lay the brick too close. It appeared, without controversy, that Spinney was in possession of the land on which the kilns stood, and was conducting some farming operations on the portion of the tract not used in making brick. There was no evidence that Spinney ever did any act or said any word indicating an intent to make an actual or a constructive delivery of the kilns to the plaintiff.

We think this testimony was insufficient to justify the finding that the plaintiff took or maintained possession of the brick. No importance is to be attached to his general statements that he had possession or was in charge. These are mere conclusions, and have no value if unsupported by the facts testified to. It clearly appears that Spinney, the man in possession of the land, commenced the manufacture of the bricks on that land, and carried that work to completion with the aid of men employed by him. There is nothing in the testimony of Sequeira to show that the possession of the brick ever passed from Spinney. There is no contention, and no basis for a contention, that Sequeira and Spinney were in joint possession, assuming that such joint possession would be sufficient. The claim that the plaintiff took possession must rest on the assumption that he took it from Spinney, with or without the latter's consent. But the record fails to show that Spinney's possession of the brick was not as full and complete at the date of the levy of the attachment as it had been at any prior time. The character of the possession which

must be taken by a pledgee in order to give him a valid lien is, as above stated, the same as that defined in section 3440 of the Civil Code. (*Lilienthal* v. *Ballou,* 125 Cal. 183, [57 Pac. 897].) That is to say, the change of possession must be actual, not merely constructive (*Bunting* v. *Saltz,* 84 Cal. 168, [24 Pac. 167]); it must be "open and unequivocal, carrying with it the usual marks and indications of ownership." (*Stevens* v. *Irwin,* 15 Cal. 503, [76 Am. Dec. 500]; *George* v. *Pierce,* 123 Cal. 172, [55 Pac. 775, 56 Pac. 53].) As was said in *McKee Stair Co.* v. *Martin,* 126 Cal. 557, [58 Pac. 1044], "there must be a visible and apparent change of the custody of the property, such as to give evidence to the world of the claims of the new owner." There was nothing in this case to show that Spinney did not at all times retain the full custody and control of the bricks. The mere fact that Sequeira gave some directions to the men engaged in the work cannot be given this effect, for it is not pretended that he ever supplanted Spinney in the general management of the work, or took its direction out of his hands.

We do not overlook the consideration that the acts necessary to constitute a change of possession depend upon the character and situation of the property transferred. "The law recognizes the fact that all species of personal property are not capable of the same kind of possession, and requires only that a purchaser or donee shall take such possession as the character and nature of the property admit of." (14 Am. & Eng. Ency. of Law, 2d ed., p. 374; *Chaffin* v. *Doub,* 14 Cal. 384; *Porter* v. *Bucher,* 98 Cal. 454, [33 Pac. 335]; *Dubois* v. *Spinks,* 114 Cal. 289, [46 Pac. 95].) Where the goods sold or transferred are bulky, or require further labor to fit them for use, it is not essential to a change of possession that they should be removed from the land of the transferrer. (*Chaffin* v. *Doub,* 14 Cal. 384; *Porter* v. *Bucher,* 98 Cal. 454, [33 Pac. 335]; *Dubois* v. *Spinks,* 114 Cal. 289, [46 Pac. 95].) Nor can it be said that the mere fact that the transferrer retains some measure of control over the goods conclusively establishes the absence of an actual and continued change of possession. (*Stevens* v. *Irwin,* 15 Cal. 503, [76 Am. Dec. 500].) In *Dubois* v. *Spinks* it was held that a quantity of cordwood had passed into the possession of the transferee, although the wood had not been removed from

the place where it had been piled. In *Tognini* v. *Kyle,* 17 Nev. 209, [45 Am. Rep. 442, 30 Pac. 829], the same rule was applied to the transfer of a large quantity of charcoal. In each of these cases, the vendor or transferrer, by words of delivery, or otherwise, turned over his possession to the vendee. Other cases of similar purport are cited. But it has never been held, at least in this state, that an actual change of possession has taken place where the transferrer, after the transfer, continues to exercise the same control and dominion over the property as before, and has done nothing to indicate any intention of passing that control and dominion from himself to his transferee.

*Woods* v. *Bugbey,* 29 Cal. 467, was a case, the facts of which were strikingly like those here presented. In holding that there had been no actual change of possession, the court used language which may well be applied to the case at bar: "In no case that we are aware of has the supreme court of this state laid down a rule requiring less than that the purchaser must have that possession which places him in the relation to the property which owners usually are to the like kind of property. In *Lay* v. *Neville,* 25 Cal. 552, the court, in reference to the subject, say: 'It was intended that the vendee should immediately take and continuously hold the possession of the goods purchased, in the manner and accompanied with such plain and unmistakable · acts of possession, control and ownership, as a prudent *bona fide* purchaser would do in the exercise of his rights over the property, so that all persons might have notice that he owned and had possession of the property.' "

Testing the evidence by this rule, we are satisfied that it fails to show that the kilns ever passed from the possession of Spinney into that of Sequeira.

There is nothing in the case tending to raise the slightest doubt as to the good faith of plaintiff in taking the assignment of the brick as security for his advances. But the hardship of a particular case furnishes no reason for disregarding the provision of the statute which makes the lien of the pledgee dependent upon actual possession of the property pledged.

The conclusion reached makes it unnecessary to consider the other points made.

The appeal from the judgment is dismissed. The order denying a new trial is reversed.

Shaw, J., Angellotti, J., Henshaw, J., Lorigan, J., and McFarland, J., concurred.