[Civ. No. 1638.   Third Appellate District.—April 30, 1917.]

J. A. MANOR, Respondent, v. J. D. DUNFIELD, Appellant.

CONDITIONAL SALE—PLEDGE—RIGHTS OF PLEDGEE.—Where the pledgee of an automobile purchased under a conditional contract of sale assumes the obligations of the purchaser under the contract and his assumption is recognized by the seller, he is entitled to all the rights and is subject to all the liabilities of the contract, and a wrongful taking of the possession of the machine by the purchaser, and assignment of his interest in the contract to a person who had sufficient notice to put him upon inquiry as to the wrongful taking, is illegal, as against the pledgee.

APPEAL from a judgment of the Superior Court of Colusa County.   Ernest Weyand, Judge.

The facts are stated in the opinion of the court.

Millington & Millington, for Appellant.

U. W. Brown, and Harmon Albery, for Respondent.

BURNETT, J.—One F. E. Partain entered into a contract with one C. L. Sanders for the purchase of a Ford automobile. Afterward by agreement a Rambler machine was substituted

for the Ford. There is no doubt that the said Sanders was
the owner of the Ford, and there is sufficient circumstantial
evidence that he was also the owner of the Rambler, although
the direct evidence is to the effect that the latter belonged
to the Sanders Brothers. This is of no importance, however,
as it is indisputable that both G. L. Sanders and the Sanders
Brothers agreed to the substitution of one machine for the
other. The Ford machine was delivered to Partain, but, on
account of his failure to meet the payments called for by the
contract of sale, G. L. Sanders again took possession of it.
Partain and plaintiff then entered into an agreement whereby
the latter was to pay Sanders what was due, and the machine
was to be turned over to plaintiff and used by him on his
auto-stage line. It was further agreed that the machine was
to be restored to Partain whenever he repaid plaintiff the
amount of money so advanced to Sanders. Plaintiff then
made arrangements with G. L. Sanders to pay him the amount
due, the sum of $108.40, Sanders understanding that the
machine was to be turned over to plaintiff. There was some
question as to the form of the receipt offered by Sanders, so
he was informed that the money was in the bank and he
could get it when he gave a proper receipt. Before the pay-
ment was made plaintiff was injured and was thereafter in a
sanatorium for some time. While there he had his brother
pay Sanders $133.40, the amount due at that time on the
machine. This payment was made on September 11th. On
September 15th Partain, who was working for plaintiff, driv-
ing his automobiles on his stage line, traded said Ford machine
for the Rambler. Plaintiff knew nothing of this until the
1st of October, when Partain brought it to plaintiff's house
and turned it over to him. From the time of the trade or
substitution of one machine for the other, the Rambler was
used on plaintiff's auto-stage line, driven by plaintiff's drivers,
and had on it his stage sign and license number. Further-
more, it was stored in a garage in Colusa in the name of and
by plaintiff, and bills against the same were charged to him
and he had possession of the machine until November 13,
1916. On November 1st Partain quit working for plaintiff,
and the Rambler remained in possession of the latter. On
November 11th plaintiff met G. L. Sanders and said to him
that he had the money for the November payment on the
machine, but that he had some money coming in the following

week and he could make the whole payment on Wednesday, to which Sanders consented, telling plaintiff that the Rambler was his and for him to take it, the car standing near at that time. However, before the following Wednesday, namely, on November 13th, Partain went to the garage, took possession of the machine, drove it away, and thereafter assigned all his interest under the contract with Sanders to Dunfield, and directed the bill of sale to be made to him. The bill of sale was so executed by Sanders Brothers and G. L. Sanders, but, before its execution, one Jake Whalen, manager of plaintiff's stage line, in the presence of defendant, his attorney, and Partain, demanded possession of the machine, showing the attorney an order for its possession he had from G. L. Sanders. Defendant heard the order read over the phone to Sanders. Whalen stated the reason he obtained the order was on account of the fact that Partain had run off with the car to Arbuckle. Said order was dated November 5th, and prior to the said agreement between plaintiff and G. L. Sanders as to the final payment, and defendant knew that Whalen was in the employ of plaintiff. Partain did not repay to plaintiff any portion of the money the latter had paid to Sanders, nor did he offer to do so. On November 15th plaintiff demanded of defendant the possession of the machine, but it was refused and the suit followed. The foregoing statement embodies a fair inference from the evidence, and the facts thus appearing justified the findings of the court that plaintiff was in the possession and entitled to the possession of the machine at the time it was delivered to defendant, that it was illegally taken from him, and that defendant had knowledge or the means of acquiring knowledge of plaintiff's claim to the possession of it.

No extended consideration of the situation seems necessary. The facts are not complicated and the legal principles involved are rudimentary and familiar. As between plaintiff and Partain there was a pledge of the machine which was to continue until plaintiff was repaid the amount of money that he advanced to Sanders. In that respect the case falls within the provisions of section 2986 of the Civil Code. There was the necessary agreement between the parties, an actual delivery of the property and a visible, unequivocal, and continued change of possession. By nothing said or done had plaintiff forfeited or yielded his right to said possession.

Plaintiff's possession was such as to satisfy the requirement even of absolute ownership, and to protect against the claims of creditors as contemplated by section 3440 of the Civil Code. That Partain had some degree of control over the machine is of no moment, since it was entirely by virtue of his employment, and under the direction of plaintiff, that he was authorized to use the machine. Any other use or assumption of control by him was a violation of his agreement with plaintiff. As a legal proposition, therefore, it is altogether clear that Partain had no right to deprive plaintiff of the possession of the machine, and his attempted transfer of his interest to defendant had no effect whatever upon plaintiff's claim. As to the relation of plaintiff and G. L. Sanders, there was a complete novation. Plaintiff assumed the obligation of Partain under the contract of sale and his substitution was recognized by Sanders. The agreement between plaintiff and Partain was ratified by Sanders, who accepted plaintiff as the debtor instead of Partain. Hence plaintiff was entitled to the rights and subject to the liabilities of the conditional sale. He was not in default, and there had been no declared forfeiture at the time he was deprived of the possession of the machine. It follows that even the owner could not take the property away from him, for it will not be disputed that the vendee is entitled to the possession until he loses the right by virtue of his violation of some provision of the contract. Indeed, as far as G. L. Sanders is concerned, it could probably be held that by reason of his express agreement with plaintiff he could not question the latter's ownership of the property. Sanders Brothers, for reasons already stated, are equally bound with the father.

The only theory upon which defendant could hold the property would, manifestly, be that he was an innocent purchaser for value without notice. We think it not unreasonable to conclude, however, that he had knowledge of the contract with plaintiff, and that the arrangement with him was for the purpose of defeating plaintiff's claim. At any rate, there was sufficient evidence that defendant was put upon inquiry, and he ought to have found out, if he did not, that the machine was wrongfully taken from the possession of plaintiff.

It may be suggested that, under the view taken by the court, complete justice may be done to all the parties. It was found not that plaintiff was the owner of the machine,

but entitled to the possession of it by reason of the pledge. To become the owner he must make the final payment. It is presumed he will do this, and thus may appellant be reimbursed for his payment. It is no violent presumption to assume that the machine is not as valuable as it was, but if plaintiff does not complete his contract he is liable, of course, to the penalty of forfeiture. Even Partain, no doubt, will be accorded ample opportunity to redeem the machine so that he may become the proud owner, not of the somewhat lowly Ford, but of the more pretentious Rambler.

We have not quoted from the decisions cited, but if interesting suggestions concerning the legal questions more or less involved herein are desired, we may refer to *Stevens* v. *Irwin,* 15 Cal. 503, [76 Am. Dec. 500], *Goldstein* v. *Hort,* 30 Cal. 372, *George* v. *Pierce,* 123 Cal. 172, [55 Pac. 775, 56 Pac. 53], and *Stevinson* v. *Joy,* 164 Cal. 279, [128 Pac. 751].

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 31, 1917.