EMMERSON MORRIS and HILTON, Ap'le. *vs.* ZENAS F. HYDE, Ap't.

The purchaser of a chattel committed it to the keeping of a third person, who suffers it without the knowledge or consent of the purchaser, to go back into the possession of the vendor, when it was attached by his creditor. *Held*, that the creditor might hold the chattel.

The law requires such change of possession, as indicates to the world at large a change of ownership; and if such possession is not taken by the purchaser, it is no excuse, that he entrusted the chattel to another, who was negligent or unfaithful.

This was an action of trover, for a mare, to which the defendant pleaded not guilty, with notice in writing that defendant attached the same as the property of one Abel Willson.

On the trial by the jury in the county court, the plaintiff's gave evidence tending to prove, that on the sixth day of March 1835, they in good faith purchased the mare of said Abel Wilson and applied the price on debts due the plaintiff's from Wilson *bona fide*, and that the plaintiff'sthen delivered the mare to a Mr. Wal-

ker to keep for the plaintiffs. That Walker took the mare to his own house.

WINDSOR,
*February*,
1836.

Morris et al.
*vs.*
Hyde.

This was on Friday in Chester, and that afterwards on Saturday Wilson went to Walker and obtained the mare to go to Ludlow, a distance of ten or fifteen miles, without the knowledge or consent of the plaintiffs. That Wilson returned to his own house on Saturday evening and on Sunday night between sun-down and next morning the defendant took the mare from the barn of Wilson.

The defendant gave in evidence the writ and execution, and further, evidence tending to show, that Wilson when on his return from Ludlow to Cavendish, said the plaintiffs permitted him to take the mare, and also, evidence tending to show, that said sale was fraudulent in fact.

The defendant requested the court to charge the jury that if the mare was attached in the possession of Wilson, under the circumstances of this case the plaintiffs could not recover.

The court after instructing the jury as to their being any fraud in fact in the sale of the mare to which there was no exception, further charged the jury that if they found the mare was purchased by the plaintiffs in good faith, by them delivered to Walker to keep, and Wilson afterwards obtained possession of the mare without the consent or knowledge of the plaintiffs, that did not subject the mare to attachments as property of Wilson, if she was attached before the plaintiffs knew of the possession by Wilson. To which charge the defendant excepted.

*Argument for defendant.*—The doctrine of constructive fraud, on the ground of possession being retained by vendor, has been long settled.—*Weeks* vs. *Weed*, 2 Aik. 64.—*Beattie* vs. *Robin*, 2 Vt. R. 181.—*Bachelder* vs. *Carter*, 2 Vt. R. 168.—*Mott* vs. *McNeal*, 1 Aik. 162.—*Durkee* vs. *Mahoney*, 1 Aik. 116.—*Judd et al.* vs. *Langdon*, 5 Vt. R. 235.

By these authorities it is established as the settled law of Vermont, as it has been heretofore understood, that upon the sale of chattels, personal possession in the purchaser, must accompany the sale, and that, in a substantial and visible manner, or the same is constructively fraudulent and void as against the creditors of the seller.

In the case of *Mott* vs. *McNeal*, 1 Aik. 165, this principle is directly laid down and avowed, that to pass a title to the purchase of personal chattels, a substantial and visible change of possession

45

WINDSOR,
*February,*
1836.

Morris et al.
*vs.*
Hyde.

must take place, so that the possession will no longer give a credit to the former owner.

The reason assigned in the last case is, so that possession will no longer give a credit to the former owner.

How does the charge of the judge in this case, correspond with the aforesaid reason.

By the case it appears, that on Friday the horse was pretended to be sold and delivered to the agent of the purchaser, no possession actually or visibly taken by himself, and on Saturday following the seller using the horse as before on a journey of 15 miles.

Now, what evidence of this pretended sale could the creditor have had? none but the possession. But, the possession was with Wilson up to Monday morning after, and in his barn at the time of the attachment.

The possession then, which is admitted to be the evidence of ownership was and continued to be (except a small part of Friday) in Wilson, and was actually his at the time of attachment.

If this mare had gone into the actual and visible possession of the purchaser, at the time and continued in his possession and use for so long a time as to make the fact notorious in the neighborhood, and this possession of Wilson had been only a casual lending with a speedy return of the animal to the owner, it might have merited a different consideration, and might have come within the decision in the 6th vol. Vt. R. p. 521.

That decision goes upon the ground of *a long continued and notorious possession of the animal* by the purchaser.

But, it is contended in this case, that there is not *one* of the alleviating circumstances which appeared in that : For,

1. There was no actual or visible possession in the purchaser at all.

2. No notoriety to any change whatever in the hands of his pretended agent.

3. The mare owned by Wilson Friday morning, in his open and notorious use, and on a journey on Saturday following.

4. The animal remained in his possession over Sunday, until Monday morning, when she was attached.

All, then, of the badges of legal fraud, were present here to warrant the defendant, the creditor, to attach.

*Argument for the plaintiff.*—The court having instructed the jury as to the fraud in fact, to which part of the charge no exception is taken, and the jury having found for the plaintiffs under

the instruction complained of, the general question then is,— <span>Windsor,<br>February,<br>1836.</span>
Was the charge of the court right?

The plaintiffs' insist, that the instruction given was *perfectly* <span>Morris et al.<br>vs.<br>Hyde.</span>
*correct*, and the only one that the case could justly admit of.

The jury found, that the plaintiffs purchased the property in good faith, that they took immediate possession of the same, committed it to their bailee *for keeping*, that without the *consent* or *knowledge* of the plaintiff's, the mare came into the possession of the vendor, and that she was attached at *defendant's suit*, before the plaintiffs *knew* of the possession having been thus regained by the vendor.

The defendant is, therefore, driven to contend, that this is a case of *fraud* in *law*. And that this is the only question.

It will be found, on examination of all the cases falling within the class of *legal frauds*, that the vendee has *permitted* the property to remain in, or to revert to the possession of the vendor, or has of his own *volition* done some act *enabling* the vendor to obtain it. But this rule is not absolute and unyielding, for there are cases when the temporary possession and use by the vendor with the knowledge and consent of the vendee has been adjudged not to *divest* the latter.—6 Vt. R., *Farnsworth* vs. *Shepard*.

On the other hand, there is not to be found a single case in which the title of the vendee has failed by reason of the vendor's re-possession which was acquired, against the consent and knowledge of the vendee.

Great hazard and often-times utter ruin to an innocent vendee would attend the transfer of property fairly purchased, were the rule enforced which the defendant contends for.

If it be indeed immaterial how the vendor regains possession, *then,* had he *stolen* the mare from the stable of the vendee and the creditor had attached her, the vendee must loose his lien. Such is the necessary result of the doctrine urged by the defendant, and the consequences could not be endured.

The reasonable rule is, that when the vendee takes possession of property fairly purchased, and uses the same means to preserve the possession of it which a man of ordinary prudence does to keep his general property, and he looses possession without any consent or knowledge of his own, he does not, ought not to forfeit his property so lost.

It is not deemed necessary to cite authorities, familiarly known to the court and the profession. Yet the plaintiffs would refer to the case of *Farnsworth* vs. *Shepard,* 6 Vt. R. 521, and 2 Aik. R. 115.

WINDSOR,
*February*,
1836.
Morris et al.
vs.
Hyde.

The opinion of the court was delivered by

PHELPS, J.—The rule which requires a substantial visible change of possession, in order to enable the purchaser of a chattel to hold it against the attaching creditor of the vendor, is too well settled in this State, by repeated adjudications, to admit of further discussion.

The possession taken, must be such as will indicate to the world at large the change of ownership. A mere temporary change, if the property revert immediately into the possession of the vendor, is not sufficient.

In this case, we are of opinion, that the temporary possession of Walker, as agent of the plaintiffs was not such as answers the requirement of the law. Had the horse been returned to the possession of Wilson, with the assent of the plaintiff, it seems to be admitted, the title of the plaintiffs could not be sustained. But it appears in this case, that such assent was not had, and it is argued, that the act of the agent, being unauthorized by the plaintiffs, they are not to be affected thereby.

It is true, as a general rule, that a party is not to be made responsible for any positive act of another, unless done by his authority or direction, express or implied. But it is also true, that where an act is necessary to consummate or perfect the right or title of a party, and such act is omitted, through the neglect or disobedience of an agent, the party who commits his rights to the fidelity of such agent, must bear the consequences. In this case, it was the duty of the plaintiffs to see that their purchase was followed by a sufficient change of possession, and if they entrust the business to an agent, they are responsible for the agent's fidelity.

Had the possession been taken and retained by the plaintiffs, in such manner, and for such length of time, as would have answered the requirements of the law, and the property had then been entrusted to the vendor, temporarily and for a special purpose, the case would have fallen within the doctrine of *Farnsworth* vs. *Shepard*, cited in the argument.

Judgment reversed, and cause remanded to the county court.