[No. 11647.   Department Two. — September 15, 1887.]

## CHARLES F. GOULD, RESPONDENT, *v.* A. HUNTLEY, APPELLANT.

SALE — CHANGE OF POSSESSION — ASSUMPTION OF OWNERSHIP BY VENDEE. — A sale of personal property, accompanied by such open and unequivocal acts on the part of the vendee as to give evidence to the world of his ownership, and to show that the ownership and possession of the vendor had wholly ceased, is valid, under section 3440 of the Civil Code, as against creditors of the vendor.

ID. — POSSESSION BY VENDOR — WHEN ALLOWED. — Where the circumstances attending the change of ownership and possession are sufficient to raise a presumption that the creditors of the vendor had notice of the sale, the vendee may loan, let to, or employ the vendor to perform services on the property sold to the same extent as though he were a stranger.

APPEAL from a judgment of the Superior Court of Placer County, and from an order refusing a new trial.

The facts are stated in the opinion.

*J. E. Prewett,* and *Freeman, Johnson & Bates,* for Appellant.

*Taylor & Holl,* for Respondent.

BELCHER, C. C.—This is an action to recover the possession or value of one bay mare and one header, which

were levied upon and sold by the defendant as sheriff of the county of Placer, under an execution duly issued upon a judgment against Joseph G. Gould and C. A. Hines, and it is stipulated that the only question involved is as to the sufficiency of the plaintiff's possession of the mare and header, to enable him to hold them as against the creditors of his vendors.

It appears from the record that Joseph G. Gould was the father of plaintiff, and owned a ranch in Placer County known as the Gould place. Concerning the ranch and mare the plaintiff testified as follows: "The Gould place spoken of was my father's ranch up to September, 1884. At that time my father conveyed this ranch to me, and I immediately went into possession of the entire ranch, buildings, and everything, and from that time to the present I have been in possession of the same, and have conducted the business of farming there. Immediately after my father conveyed the ranch to me he went East, and remained until March, 1885. When he came back he came to the ranch, and since then he has lived in the same house with me, because he reserved this right in the conveyance to me. He is seventy-nine years old. I bought the mare the same time the ranch was conveyed to me, and I have ever since had exclusive possession of the ranch and mare, except that my father lived in the house with me, and drove the mare several times to Sacramento. . . . . I bought the mare from my father in September, 1884. I had used her in my father's employ for over six months before the purchase, and had principally cared for her during that time. I kept her both before and after the sale on the Gould place. . . . . My father has not exercised any authority or control over the mare since I bought her, or over anything on the ranch since he conveyed it to me, except as above stated." 

Concerning the header, the plaintiff testified: —

" C. A. Hines and I bought the header in the spring

of 1884, and also the beds, and brought them into the field and ran them in partnership for a few days; then he turned his interest in them over to me on condition that I would pay our vendors for them, which I afterwards did. Hines did not afterwards use the header. . . . . After Hines let me have his interest in the header and beds, I ran the machine myself during the balance of the season, cutting grain whenever I could get a job; Hines had nothing more to do with it, and after the ranch was conveyed to me by my father, I took the header and beds home and put them under shelter, where they remained until they were attached.

"Hines, who is married to my sister, has been on the ranch some of the time since I owned it, but not continuously. He has a place of his own, fifty miles away, where he has been most of the time."

The above is substantially all the testimony there is in the case, except that a deputy sheriff was called as a witness for the defendant, and having stated that he levied the execution on the 25th of March, 1885, said: "At the time I found her [the mare] and levied upon her, J. G. Gould held her by the halter. He was leading her for the purpose of putting her to a horse. C. F. Gould was not present."

Upon this testimony, the court below gave judgment in favor of plaintiff, and denied the defendant's motion for a new trial.

It is now claimed for the appellant that the plaintiff's possession of the property in question was not such as is required by section 3440 of the Civil Code, and that the court therefore erred in giving the plaintiff judgment.

So far as it relates to the header, we are satisfied that the judgment was right, and the motion properly denied. There can be no question that when Hines sold to the plaintiff his interest in the header, the sale was accompanied by an immediate delivery, and followed by an actual and continued change of possession.

And so far as it relates to the mare, we think the judgment must also be sustained. The ranch was conveyed to plaintiff in September, and he took and held the actual and exclusive possession of it for six months. The mare was sold to the plaintiff at the same time, and so far as we can see, his possession of her during the whole six months was open and unequivocal, carrying with it the usual marks and indications of ownership. It was such as to give evidence to the world of the claims of the new owner. It was an open, visible change, manifested by such outward signs as rendered it evident that the possession of the vendor had wholly ceased. (*Stevens* v. *Irwin*, 15 Cal. 506; *Cahoon* v. *Marshall*, 25 Cal. 201.)

And it was not necessary that the plaintiff's possession of the mare be continued indefinitely. It was said by Redfield, J., in delivering the opinion of the Supreme Court of Vermont in *Dewey* v. *Thrall*, 13 Vt. 284: "After a sale of personal chattels has become perfected by such a visible, notorious, and continued change of possession that the creditors of the vendor may be presumed to have notice of it, the vendee may lend or let, or employ the vendor to sell, or perform any other service about the thing, with the same safety he may a stranger." So in *Stevens* v. *Irwin*, *supra*, this court said: "This possession must be continuous, — not taken to be surrendered back again, — not formal, but substantial. But it need not necessarily continue indefinitely, when it is *bona fide* and openly taken, and is kept for such a length of time as to give general advertisement to the *status* of the property and the claim to it by the vendee." (See also *Godchaux* v. *Mulford*, 26 Cal. 316.)

In the light of these decisions, we cannot say that the plaintiff's possession of the mare was not sufficient, the court below having found that it was; and we think, therefore, that the judgment and order should be affirmed.

Foote, C., and Hayne, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.