REYNOLDS, Respondent, v. BECK, Appellant.

**St. Louis Court of Appeals, November 15, 1904.**

1. **FRAUDULENT CONVEYANCES: Sale of Chattels: Question of Law or Fact.** Whether section 3410 of the Revised Statutes of 1899 in regard to sales of chattels has been complied with in a given instance, is a question of law, if the evidence suggests only one fair inference regarding the performance or non-performance of the statutory requirements essential to a valid sale; it is a question of fact for the jury if the testimony leaves room for doubt or for diverse beliefs as to whether the statute has been complied with.

2. ———: ———: **"Continued" Possession.** If the sale of a chattel is followed by unequivocal delivery and the exclusive and visible possession of the buyer long enough to give reasonable notice to the public that the title has been transferred, the requirement of the statute regarding "continued" possession is complied with.

3. ———: ———: ———: **Caveat Emptor.** The doctrine of *caveat emptor* was not abolished by the statute. The delivery and change of possession must be of a character to apprise persons of common business prudence that change of ownership has occurred, but need not be such as to make the deception of a careless purchaser impossible.

4. ———: ———: ———: **Bailing to Vendor.** If there has been visible and exclusive possession in the buyer continued long enough to give reasonable notice to the public of the transfer, the buyer may, without violating the statute, bail the property to the original owner in the usual course of business.

5. ———: ———: ———: ———. The purchaser of a carriage after keeping it in his exclusive control for more than two months, made arrangement with the original owner, a livery stable keeper, whereby the latter should keep it, and also board a team of the purchaser at a given rate, and should run the team and carriage in his business for a certain per cent of the proceeds. The livery stable keeper had similar arrangements with regard to other teams and carriages. *Held*, in an action of replevin by the purchaser against a subsequent mortgagee who had obtained possession, whether the possession was "continued" as required by the statute, was properly submitted to the jury.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

AFFIRMED.

*George F. Beck* for appellant.

(1)   The actual and continued change of possession contemplated by the statute, must be open, notorious and unequivocal—such as to apprise the community, or those accustomed to deal with the vendor, that the goods sold have changed hands, and that the title has passed from the vendor to the vendee.   Lesem v. Herriford, 44 Mo. 323; Bishop v. O'Connell, 56 Mo. 158; Wright v. McCormick, 67 Mo. 426; Stern v. Henley, 68 Mo. 262; Revercomb v. Dunker, 74 Mo. App. 570. (2)   Whether the change of possession was such as the law requires, is a question for the court and when it appears from the undisputed facts that there was no such change of possession, the court should, as a matter of law, declare the sale fraudulent.   Stewart v. Bergstrom, 79 Mo. 524; Knoop ex rel. v. Nelson Distilling Co., 26 Mo. App. 303; Lesser v. Boekhoff, 33 Mo. App. 223; State ex rel. Cuomo v. Hall, 45 Mo. App. 298; Cracker & Candy Co. v. Ellis & Co., 45 Mo. App. 585. (3)   In Missouri the retention of personal property by the vendor, after sale, amounts to fraud *per se*, that is conclusive and cannot be rebutted by proof of honesty and fairness in the transaction.   R. S. 1899, sec. 3410; Rocheblave v. Potter, 1 Mo. 561; Foster v. Wallace, 2 Mo. 231; Sibley v. Hood, 3 Mo. 290; King v. Bailey, 6 Mo. 575; Claflin v. Rosenberg, 42 Mo. 439; Rice, Stix & Co. v. Sally, 176 Mo. 107, 75 S. W. 398.   (4)   The statute is not complied with, if before the return of the chattel to the vendor there was not such a change of possession as indicates to the world at large a change of ownership.   The change should be such as may fairly lead those around, if they have any interest in

the matter, to a reasonable belief that there has been a sale and change of property. The change of possession must also continue for such a length of time as will be likely to operate as a general advertisement of the change of title. Bump on Fraudulent Conveyances (4 Ed.), sec. 124; Houston v. Howard, 39 Vt. 54; Chamberlain v. Winnie, 11 Nev. 268; Weeks v. Wead, 2 Aiken (Vt.), 64; Morris v. Hyde, 8 Vt. 352; Rogers v. Vail, 16 Vt. 327; Norton v. Doolittle, 32 Conn. 405; Webster v. Peck, 31 Conn. 495; Mills v. Warner, 19 Vt. 609; Ruddle v. Givens, 76 Cal. 457.

*Sloan Pitzer* for respondent.

GOODE, J.—Action of replevin for possession of a carriage and damages for its detention. Both parties claim title and right of possession under Edward F. Howard; the appellant by virtue of a mortgage executed by said Howard, August 8, 1901, and the respondent by purchase from him in 1899. For years Howard has conducted a livery stable in the city of St. Louis at 2801 Laclede avenue. He bought the carriage in 1897 from Cunningham & Sons for $1,000 and was proven beyond doubt to have sold it to Reynolds, the respondent, in 1899 for $700. The good faith of that transaction is not in contest on the appeal. The question here is whether the sale to Reynolds must be held void in law because in conflict with the section of the statute against fraudulent conveyances which requires a sale of goods and chattels to be accompanied by delivery of possession in a reasonable time and followed by an actual and continued change of possession of the thing sold, to prevent it from being fraudulent and void as against creditors of the vendee and subsequent purchasers in good faith. R. S. 1899, sec. 3410.

There was testimony that Beck, the appellant, took a mortgage on the carriage, as stated, August 8, 1901, for a debt Howard owed him for produce and to in-

demnify him as surety for Howard on a lease.  As Reynolds' purchase preceded the mortgage by two years, it, of course, vested the title securely against the mortgage lien unless the statute was diregarded.  Beck contends it was disregarded, and so obviously that the court should have declared the sale to Reynolds void without submitting the issue to the jury.  To support this proposition these facts are relied on: Reynolds bought and paid for the carriage and on the same day had it sent to his own stable on Spruce street.  He kept vehicles and teams for hire at different stands in the city.  After the carriage had remained in his actual possession and at his stable for two months, he sent it and a team back to Howard's stable to board at an agreed rate; $32 a month.  This was done, Reynolds said, for two reasons:  He had insufficient room in his stable and, business having grown dull with him, he thought he would get more custom for the carriage at Howard's stable.  It was arranged that if it was let out at Howard's for weddings, funerals or other occasions, the latter should have ten per cent of the fee.  Howard sometimes collected the full fee and credited it on account for board.  It was shown that he kept teams and vehicles of other persons under similar arrangements and had kept two other teams and carriages belonging to Reynolds for several years on the same terms.  Reynolds continued to hire the carriage and it was driven by his drivers.  He paid for all repairs made on it, though sometimes these were ordered and paid for in the first instance by Howard.  There was evidence to establish all the facts related and there is little dispute about the facts of the sale of the carriage to Reynolds and what followed.  Pursuant to the stated understanding, the carriage remained in Howard's stable from 1897 until it was delivered by the sheriff to Beck under a writ of replevin sued out by him November 19, 1903, in enforcement of the mortgage of August 8, 1901, which had been given, meanwhile, by

Howard to Beck. Reynolds in turn replevied it from Beck in this action. There was testimony that the mortgage, in which the description is ambiguous, covered the carriage in litigation, though Howard swore it did not, but a different vehicle; an immaterial issue here. It does not appear that Beck was misled by Howard's original ownership of the carriage, or that he would not as readily have accepted security from Howard on either of the other vehicles Reynolds had in the stable, if it had been offered. What we have to dispose of is the proposition advanced by appellant's counsel, that the court below ought to have held the sale to Reynolds conclusively fraudulent and void in law as against the mortgage, instead of leaving its validity to the jury. Legal instead of actual fraud is relied on to vitiate the sale. The court submitted the question of whether the statute had been complied with to the jury by instructions very favorable to the appellant and affording him no just ground of complaint, if the decision of that matter could properly be left to the jury. The substance of those instructions was that unless Reynolds bought the carriage from Howard on August 7, 1899, and within a reasonable time thereafter, regard being had to the nature and situation of the property, possession of it was delivered to Reynolds and within such time the latter took actual, exclusive, open, notorious and unequivocal possession and thereafter continued in such possession and control until the date of Beck's mortgage, the verdict should be for Beck. An unqualified order for a verdict in his favor was requested and refused, and of this ruling complaint is made.

Whether the statute in regard to sales of goods and chattels was complied with or not in a given instance, may be a question of fact for the jury, or of law for the court; and whether it is the one or the other depends, as in all litigation, on the uniformity or diversity of the evidence touching the point and the pos-

sibility of drawing one or more conclusions from it. Claflin v. Rosenberg, 42 Mo. 439; Huggins v. Ellis, 45 Mo. App. 585.    If the evidence is unvarying and suggests only one fair inference regarding performance or non-performance of the statutory acts essential to an invulnerable sale, the result is a legal one which the court must declare.    But if the testimony leaves room for doubt, or for diverse beliefs, on the question of whether the statute was complied with, the jury must decide.    Lesser v. Boekhoff, 33 Mo. App. 223.    There are sales of chattels wherein there is a well-meant attempt to comply with the statute, but the accompanying acts are of a character to leave it uncertain whether, in truth, that open, visible and continued change of possession occurred, which the law exacts as sufficient to apprise the community of the changed ownership; and then the opinion of business men on the question is likely to be more valuable than a judge's.    We doubt if Reynold's title might not have been declared prima facie valid and are positive it could not be denounced as fraudulent and void in law.    That he openly and visibly took possession of the carriage when he bought it, removed it to his own premises, put his own drivers on it, kept it in his own custody, and handled it exclusively through his employees for two months or more, was established beyond dispute.    The exigencies of business made it advantageous thereafter, for him to keep it and the team that drew it in Howard's stable; as he did other vehicles and teams, and as other owners of similar property did.    Howard stored vehicles and handled teams belonging to other people, as well as his own.    That was part of his business, as it is of liverymen in general, and is known to be.    Reynolds did what is usually done after the sale of a chattel to assert and manifest title to his purchase.    His possession was attended with unmistakable signs of ownership which must have notified the neighboring

community that the carriage no longer belonged to Howard, but to him.

The stress of the argument for the appellant is laid on the word "continued" in the statute and the appeal calls for a determination, in some measure, of the effect of that word in fixing the kind of possession that will satisfy the statute. The language of the clause to be interpreted is: "Every sale made by the vendor of goods and chattels in his possession, or under his control, unless the same be accompanied by delivery in a reasonable time, regard being had to the situation of the property, and be followed by an actual and continued change of the possession of the things sold, shall be held to be fraudulent and void as against creditors of the vendor or subsequent purchasers in good faith." The purpose of this statute of ancient ancestry, and familiar to every lawyer, is to protect the public against fraudulent sales of chattels. The fraud to be prevented is twofold, namely; screening the goods of an owner from legal process in behalf of his creditors by a sham sale to another without delivery, thereby leaving the original owner in the enjoyment and use of the property, or exposing creditors of and purchasers from the vendor to loss through seeing him in possession of goods already sold, mistaking him for the owner and treating him as such. These mischiefs the statute aims to prevent by requiring, as the condition of a sale valid against creditors and purchasers, certain formalities or ceremonies adapted to give the transaction publicity—requiring it to be celebrated as it were. The purpose to be achieved is giving notice to the community of the change of ownership, and the law is to be interpreted broadly enough, consistently with its language, to realize this object as far as possible. A sale however honest must be invalidated, if the requisite delivery and change of possession (one actual, open, visible, exclusive and continued) did not follow and this appears indisputably from the facts. Every

essential element of the sale is intended to subserve the main end of the statute; a publicity, which will prevent the subsequent use and enjoyment of the thing sold by the vendor, without molestation by his creditors, and put third persons· on guard against treating the vendor as still the .owner.  To this end of public notice are directed all the statutory requirements: firstly, the delivery of the article to the vendee; secondly, delivery within a reasonable time, the circumstance considered; thirdly, the actual change .of possession and, fourthly, the continued change.   It follows that the several terms of the law. should be expounded so as to assist in achieving the main purpose, and this is done.  The delivery must be real, instead of symbolical or constructive, if it can be considering the nature and situation of the property; it must be open instead of secret; exclusive in the vendee and not concurrent with the vendor; and such acts must be done to give these characteristics to the sale as are most suitable under the circumstances.  Claflin v. Rosenberg, supra.  By like reasoning the change of possession must be actual, not merely formal in trust for the vendee, and continued instead of transient; for a transitory change is compatible with a quick restoration of the use of the chattel to the vendor, and is apt to escape the notice of others and leave them in the belief that the vendor is the owner.  But whilst the change must be continued, it need not be perpetual in order to subserve the purpose of the law.  If an open, unequivocal delivery of the article, and an actual change of possession takes place, and  the exclusive and visible possession of the buyer continues long enough to give reasonable notice to the public that the original owner has transferred and the buyer acquired the title, nothing further, in aid of the purpose of the statute, will be gained by prohibiting the buyer from thereafter bailing the particular article to the original owner, just as he would any other article, should the course of business make

it convenient for him to do so. On the contrary, such a restraint would then become purely arbitrary, inconsistent with the right of disposition which is an incident of property, incompatible too with commercial freedom and that freedom of conduct which men like. The delivery and the change of possession must be of a character to apprise persons of common business prudence that a change of owership has occurred, but need not be such as to render it impossible for a careless creditor or purchaser to be deceived. The doctrine of *caveat emptor* was not abolished by the statute and men must still be on their guard when they buy chattels, take them as security or levy on them. The foregoing principles are sanctioned by the adjudicated cases construing statutes against fraudulent conveyances.

The inquiry in the case at bar is whether the fact that the carriage in controversy was put again into the original owner's stable under the agreement we have stated, after the purchaser (Reynolds) had had it in his open and exclusive possession and custody for two months, was so plain a violation of the law as to vitiate Reynolds' title and give Beck's mortgage priority as a legal consequence. This is equivalent to asking if Reynolds' possession was "continued" in the statutory sense; which is to be resolved by considering if it lasted long enough to notify reasonably prudent men of the vicinity that Reynolds was the owner, taking account of the undenied facts that an actual delivery and a visible and exclusive possession in Reynolds followed the sale, that his employees still drove the carriage, that it was hired in his name and for his benefit, that it was merely at Howard's to be stabled, and that the arrangement under which it was there was according to the custom of Howard's business, not only with Reynolds, but with others as well. We hold that placing the vehicle in Howard's care and in his stable under such circumstances did not vitiate the antecedent

sale to Reynolds as a matter of law. In a sense Reynolds' possession of the carriage was never interrupted after he first acquired it, for it remained in his own hands or in Howard's as his agent all the time. The trial court required the jury to find Reynolds' possession was open and notorious to the date of Beck's mortgage as the condition of a verdict for the former. The possession of the purchased chattel by a vendee through an agent, if the agent is the vendor, will not always suffice to satisfy the statute; since instances occur in which a possession of that kind would afford opportunity for sham sales in the interest of vendors. For this reason, if an owner of a stock of merchandise is left in possession of the stock as the agent of a purchaser, without any steps being taken to apprise the public that the owner is no longer in possession in his own right, the merchandise is subject to levy for the latter's debts. The sale in question must derive validity, not from Howard keeping the carriage as Reynolds' agent, but from a sufficiently open, exclusive and protracted possession by Reynolds to answer the requirements of the statute; or else from Howard's custody as agent being of such a character, considering his habit of boarding teams and storing carriages for others, that reasonably prudent men were in no danger of deception regarding the title to the property. We must bear in mind, not only that the law does not relieve men from the burden of ordinary business caution in taking measures against fraudulent sales; but also, that the statute may be so extended by construction as to make it a pitfall instead of a safeguard. It would be difficult, if not impossible, for the general public to learn that it is unlawful to bail an article in good faith to a previous owner after a purchaser has openly received it into his hands and kept it for months.

In reviewing decisions on the proposition of law involved, a distinction must be made in weighing their authority, between those of jurisdictions wherein the

presumption of fraud from non-observance of the statute is conclusive, as it is in Missouri, and those of States wherein it is only prima facie and open to disproof.   Attention to the different cases will disclose that in all of them insistence is laid on the necessity of an actual, open delivery after the sale, and that when this occurs, continuance of the possession in the vendee prolonged sufficiently to afford a fair opportunity for the community to observe or otherwise learn of the change of possession, is all that is required for compliance with the statute. When unequivocal delivery and change of possession occur, restitution of possession to the vendor, unless it plainly happens before the vendee has been in charge of the article long enough to publish his title, may be a badge or circumstance to show actual fraud, but is not conclusive of legal fraud. There are a few decisions relied on by the appellant that are out of accord with the current of authority as to what length of possession in the vendee suffices, and harsher in their application of the statute than seems right on principle.

A case often cited on this question as well-considered is Stevens v. Irwin, 15 Cal. 503, 76 Am. Dec. 500. There the vendee had exclusive possession of the chattel for a year or more, when it was again put into the custody of the vendor as the vendee's agent. After discussing the two theories regarding the statute against fraudulent conveyances (namely, as to whether a sale in disregard of it is conclusively or only presumptively void), the court said:

"But we apprehend that the Legislature never intended by the statute to go beyond the extreme rule adopted by the Supreme Court of the United States and the English cases on which that rule rests. There was no reason of policy for such extension; indeed, such extension might defeat, in some degree, the reason for adopting the Federal rule. The rule as defined by our

statute, is almost in the language of that given in the cases which establish the rule in England. It is true that some stress is laid on the words 'actual and continued change of possession;' but these words are suggested by the facts and principles of the decided cases referred to. The word 'actual' was designed to exclude the idea of a mere formal change of possession, and the word 'continued' to exclude the idea of a mere temporary change. But it never was the design of the statute to give such extension of meaning to this phrase 'continued change of possession' as to require, upon penalty of a forfeiture of the goods, that the vendor should never have any control over or use of them. This construction, if made without exception, would lead to very unjust and absurd results. A vendor could never become trustee of the goods, without their being forfeited or liable for his debts. If a livery stable keeper hired a horse to the original vendor, it would be liable for his debts; or if a boarder came into a room, the furniture might be liable for his debts if he once owned it. The 'continued change of possession' then, does not mean a continuance for all time of this possession, or a perpetual exclusion of all use or control of the property by the original vendor. A reasonable construction must be given to this language, in analogy to the doctrines of the courts holding the general principles transcribed into the statute. The delivery must be made of the property; the vendee must take the actual possession; that possession must be open and unequivocal, carrying with it the usual marks and indications of ownership by the vendee. It must be such as to give evidence to the world of the claims of the new owner. He must, in other words, be in the usual relation to the property which owners of goods occupy to their property. This possession must be continuous —not taken to be surrendered back again—not formal, but substantial. But it need not necessarily continue indefinitely, when it is bona fide and openly taken

and is kept for such a length of time as to give general advertisement of the status of the property and the claim to it by the vendee."

In Gould v. Huntley, 73 Cal. 401, the question came up and was thus treated:

"It is now claimed for the appellant that the plaintiff's possession of the property in question was not such as is required by section 3440 of the Civil Code, and that the court, therefore, erred in giving the plaintiff judgment. So far as relates to the header, we are satisfied that the judgment was right, and the motion properly denied. There can be no question that when Hines sold to the plaintiff his interest in the header, the sale was accompanied by an immediate delivery and followed by an actual and continued change of possession. And so far as relates to the mare, we think the judgment must also be sustained. The ranch was conveyed to the plaintiff in September, and he took and held the actual and exclusive possession of it for six months. The mare was sold to the plaintiff at the same time, and so far as we can see his possession of her during the whole six months was open and unequivocal, carrying with it the usual marks and indications of ownership. It was such as to give evidence to the world of the claims of the new owner. It was an open, visible change manifested by such outward signs as rendered it evident that the possession of the vendor had wholly ceased. Stevens v. Irwin, 15 Cal. 506; Cahoon v. Marshall, 25 Cal. 201. And it was not necessary that the plaintiff's possession of the mare be continued indefinitely."

In Carpenter v. Clark, 2 Nev. 243, the controversy was over a pair of mules. Plaintiff had bought them from E. M. House, who had subsequently delivered them back to plaintiff so as to amount to a sale. Its validity was questioned by a creditor of House who attached the mules. While House was the quasi-owner of them, under an agreement with Carpenter, he drove

them.    After delivery back to Carpenter, they were kept at a public stable for a few days, then taken to plaintiff's stable; were worked with other mules belonging to plaintiff and occasionally driven by House who was working for Carpenter.  He drove them ninety days in eight months.  This was held to be a perfect sale and continued possession.  We quote from the opinion:

"But it is claimed by the appellant that even if the delivery were sufficient, the change of possession was not such a continuous change as is required by the statute.  We do not think this language of the act should be construed to mean a change of possession for an indefinite period of time.  Like all statutes, it must be interpreted by the light of the reason or necessity which induced its adoption.  The evident object of the Legislature was to require such change of possession as will amount to a general advertisement of the status of the property and the claim to it by the vendee, and to declare such sales void where the delivery is not bona fide, but merely formal, taken by the vendee to be surrendered back again.  There certainly must be some period when possession of the property by the vendor would not relate back to and vitiate the sale made by him.  To hold that the change of possession must continue indefinitely, would produce results so unjust and absurd that it can hardly be believed the framers of the statute had any such purpose in view."

In Brady v. Haines, 18 Pa. St. 115, the court said: "The rule of law we are disposed to maintain as inflexible which makes it a fraud *per se* if the possession does not follow as well as accompany the transfer. Babb v. Clemson, 10 Ser. & R. 419; Young v. McClure, 2 W. & Ser. 150; Carpenter v. Mayer, 5 Watts 485.  In Babb v. Clemson there was no delivery and in Carpenter v. Mayer there was no delivery for the period of five weeks; and in Young v. McClure there was a change of possession for one hour only, and even dur-

ing that hour the possession was not exclusive. It has been ruled in a later case not reported, that the vendee's possession must continue; for if the property is returned after a short interval, the transaction is colorable and fraudulent. But the presumption of legal fraud is rebutted where there is in the vendee an exclusive, notorious possession, with the use of the property in the ordinary way. If the fact of the property being found after a month or more in the hands of the vendor, is suspicious and may raise a question of collusion, it is still susceptible of explanation under the circumstances, and may be consistent with a fair and bona fide sale of the property; all of which as evidence or not of actual fraud, were facts for the consideration of the jury.''

In Groff v. Cooper, 6 Houst. (Del.) 45, this was said:

"If you should be of opinion, from all the evidence in the case that the goods did so come into and continue in the possession of Hickman after they had been delivered by him to the plaintiff and became his own property again, with the right on his part to use and dispose of them as his own goods, then the delivery of them on the preceding day by him to the plaintiff, however formal or particular it may have been, became wholly inoperative and void under the statute as against the creditors of Hickman, and their verdict should consequently be for the defendant.

''But what is meant with respect to the sales of personal property by the terms used in the statute of frauds to which we must give an interpretation consistent with reason, 'come into and continue in the possession of the vendor' after they have been sold and delivered to the vendee, is this: that such property shall in some way, no matter how, get back or be restored to the possession and ownership of the vendor, without any responsibility or liability for it to his vendee, who apparently became the actual bona fide purchaser

and owner of it; and which is the same as saying that it returns to the possession of the vendor so as to give him the dominion and control absolutely over it without any accountability for it on his part to the vendee, and continues therein; that is to say, it remains his so long as he chooses to retain the possession and ownership of it. The word 'continue' is used in the statute to distinguish such a possession from a transient or temporary possession merely for a special purpose entirely consistent with the purchaser's general property in it."

Other decisions of the same purport as the foregoing and in point are: Farnsworth v. Shepard, 6 Vt. 523; Morris v. Hyde, 8 Vt. 356; Dewey v. Thrall, 13 Vt. 284; O'Gara v. Lowry, 5 Mont. 435; Ewing v. Merkly, 3 Utah 412; Brown v. Riley, 22 Ill. 46; Wright v. Grove, 27 Ill. 426; Brady v. Haines, 18 Pa. St. 113; Graham v. McCluny, 40 Pa. St. 515, 80 Am. Dec. 591. Those cases are all from jurisdictions in which, as in this State, the statute is construed to render a non-compliance with it conclusive as to the fraudulent character of the sale. In California the rule in respect to the necessity of an indefinite continuance of possession in the vendee has undergone a change since the earliest decisions. It was held in Bacon v. Scannell, 9 Cal. 271, that as the statute fixed no time when the possession of the vendee might cease without prejudice to his right, the courts could fix none, and that it must last, apparently, indefinitely.

We cite some cases holding that a reasonable length of possession in the vendee is sufficient to satisfy the law, from States wherein the rule prevails that a disregard of the statute renders the sale only presumptively void. French v. Hale, 96 N. H. 137; Johnson v. Willey, 46 N. H. 75; Town v. Rice, 59 N. H. 413; Doyle v. Stevens, 4 Mich. 93; Hopkins v. Bishop, 91 Mich. 328; Knight v. Townsend, 63 Barb. 311. Instructive passages might be selected from the opinions in all the

cases we have cited, expounding the law in harmony with what we have written; but, subject to a few seemingly erratic and disregarded cases, the courts are agreed concerning the principles of the law on the subject and it is needless to quote other comments.

We conclude that the appellant's case was fairly and correctly tried and affirm the judgment of the lower court. All concur.