MOUND CITY FINANCE COMPANY, A CORPORATION, RESPONDENT, v. HARRY FRANK, APPELLANT.—199 S. W. (2d) 902.

St. Louis Court of Appeals. Opinion filed February 18, 1947.

Respondent's motion for rehearing overruled March 21, 1947.

808

*Harry A. Frank* appellant, attorney *pro se*.

*Hinkel & Carey* for respondent.

SUTTON, C.—This is an action in replevin, commenced before a justice of the peace in St. Louis County, on May 15, 1940, for the possession of an automobile. The automobile was taken from defendant's possession under the writ of replevin, but he furnished bond and repossessed the automobile. On appeal from the justice

there was a trial anew in the circuit court, without a jury, which resulted in a judgment for plaintiff. Defendant appeals.

On January 12, 1940, G. V. Fletcher, Inc., was an authorized dealer in Hudson automobiles. His place of business was at 2729 North Grand Boulevard, in the City of St. Louis. On that day G. V. Fletcher, who was president of G. V. Fletcher, Inc., made out a bill of sale to C. H. and Helen Bassett, his wife, who resided at 5133 Labadie Avenue, in St. Louis, for the automobile in suit. The bill of sale described the automobile as follows: Make Hudson, model touring brougham, new, serial No. 4028753, motor No. 4028753, maroon sedan. The purchase price is stated as $919, with extras and sales tax amounting to $22.18, making a total of $941.18. The bill shows "cash on delivery $178.18", and a used Ford Tudor taken in trade at $338, leaving an indicated balance due of $425. With this bill of sale as evidence of their ownership of the automobile, the Bassetts obtained from the Pine Lawn Bank, located at Pine Lawn, in St. Louis County, a loan of $499.33, which covered the indicated balance due and the premium for insurance and some other charges, and executed their promissory note to the bank for $499.33, together with a chattel mortgage on the automobile to secure the payment of the note. The mortgage was filed in the office of the recorder of deeds of the City of St. Louis.

Three monthly installments due on the note in February, March, and April, 1940, were paid. An installment due in May, 1940, was not paid. On May 4, 1940, the bank sold and assigned the note to plaintiff, Mound City Finance Company.

No certificate of title to the automobile was ever issued to the Bassetts or either of them.

Jean Zemblidge testified, for plaintiff, that she was employed by the Pine Lawn Bank on January 12, 1940, as assistant cashier; that the Bassett note and chattel mortgage were signed in her presence on that day; that she did not personally see the automobile at the time the loan was made, but that the automobile was appraised at that time by the bank's appraiser, John Albrecht; that she recalled of her own knowledge that when the application for the loan was made the bank's appraiser went out and checked the automobile and made the appraisement and brought back to her a slip showing the motor number; that she checked the number with the original record and then a check for $425 was made and delivered to Mr. Homer Hughes, an employee of the Fletcher Company; that Mr. Bassett told her where the automobile was located at that time; that they always had to know where the automobile was located; that Mr. Bassett stated that the automobile was located at the Fletcher Company where he was buying it; that the check for $425 was made payable to G. V. Fletcher, Inc.

Homer Hughes testified, for plaintiff, that on January 12, 1940, he was employed by G. V. Fletcher, Inc., as used car manager; that on that day he took Mr. Bassett and his wife to the bank at the direction of Mr. Fletcher; that the purpose of his going to the bank was to get the balance due for the Hudson car; that he took the bill of sale with him, and upon receiving a check for the balance of $425 made the notation appearing on the bill of sale as follows: "Paid in full, G. V. Fletcher, H. Hughes"; that a Hudson touring brougham, as the automobile was described in the bill of sale, was a two-door automobile, and that a maroon sedan, as the automobile was further described in the bill of sale, was a four-door automobile; that he did not check the number of the automobile sold to the Bassetts; that all he got was the bill of sale and another thing out of the salesman's book, with instructions to take Mr. and Mrs. Bassett to the bank; that he did not have anything to do with the transaction over in Fletcher's place of business; that he did not know Mr. Bassett or his wife; that he used his demonstrator to drive Mr. Bassett and his wife to the bank; that he did not know where the automobile was located that was described in the bill of sale; that he did not know whether the item of $178.18, shown in the bill of sale as cash on delivery, was ever paid; that he did not know whether or not the Bassetts had a used Ford Tudor for which an allowance of $338 was made as indicated in the bill of sale; that the check he received from the bank was made payable to G. V. Fletcher, Inc.; that after he received the check he drove Mr. and Mrs. Bassett back, and gave the check to the bookkeeper of the Fletcher Company; that he did not recall whether at that time Mr. Bassett had his Ford automobile; that he did not remember talking with Mr. Bassett about trading his Ford automobile; that the number of the 1936 Ford car that was traded in on the Hudson deal was 2967761; that that was the motor number of the 1936 car; that he did not know whether Bassett got the Hudson car on the day the loan was made or not; that he did not know whether or not a car was delivered to Mr. Bassett on this occasion about January 12, 1940.

John Albrecht testified, for plaintiff, that on January 12, 1940, he was employed at the Pine Lawn Bank as a collector and car appraiser; that on that day he inspected a 1940 maroon sedan; that he inspected the car out in front of the bank; that the procedure followed in inspecting an automobile was that the bank would tell him that they had a certain type of car they wanted him to look at; that he would go out there and inspect the motor number and the tires and the license number and write that down and hand it in to the bank, and that was the end of his transaction; that he did not recall the motor number of this automobile because he looked at too many automobiles, but did inspect this particular automobile and turned that information in to the bank; that he gave that information to Miss Zemblidge; that his position required him to inspect many

automobiles; that some days he would inspect as many as three or four, and other days maybe only two; that he stated that he inspected this automobile in front of the bank because that was the only place where he could have inspected it, that was where Mr. Bassett brought the car; that that was where he customarily inspected cars when they were brought to the bank, any place along the street in front of the bank; that he sometimes went to the dealer's place to inspect cars, but never went to Fletcher's place of business.

Charles Sakowski testified, for plaintiff, that he was employed by the Mound City Finance Company as vice president and manager; that on May 4, 1930, he purchased a note secured by a chattel mortgage from the Pine Lawn Bank; that the note was for the sum of $499.33 signed by Mr. and Mrs. Bassett; that he paid a valuable consideration for the note; that no payments were made to him on the note; that he contacted Mr. Bassett, but was not able to collect any money from him; that after a certain length of time he ascertained that Mr. Bassett did not have the automobile; that he received from the bank the note and mortgage, but did not receive a certificate of title; that it was not his custom necessarily to receive a certificate of title.

The evidence shows that on January 18, 1940, C. H. Bassett executed a chattel mortgage to G. V. Fletcher, Inc., for $128, covering on a used Ford 1937, 8 cylinder, Tudor, the motor number of which was 54-83581, and that G. V. Fletcher, Inc., on the same day assigned the mortgage to the National Bond and Investment Company. The mortgage designated C. H. Bassett as the purchaser of the automobile, and the motor number of a car taken in trade as 2967761. It further described the car taken in trade as a 1936 Ford Tudor. It further showed the total cash delivery price as $275, allowance on trade in $175, total down payment $175, balance due dealer $100, balance due from purchaser $128. It is obvious that the car designated in this mortgage as taken in trade is the same car designated in the bill of sale of the Hudson sedan as taken in trade in that deal. The motor number of the car is the same, and the further description of the car as a 1936 Ford Tudor is the same.

On April 19, 1940, defendant, Harry Frank, purchased from G. V. Fletcher, Inc., the Hudson automobile. He found the automobile on the floor of the showroom of G. V. Fletcher, Inc., at 2729 North Grand Boulevard. He had previously examined the automobile on the floor of the showroom. The purchase price was $878, to which was added sales tax $17.56, and license transfer and title $3, making a total of $898.56. He traded in on the deal a 1936 Chevrolet coach, for which he was made an allowance of $300, leaving a balance of $598.56, which was paid G. V. Fletcher, Inc. in cash. Defendant received from G. V. Fletcher, Inc. a bill of sale, and the automobile was delivered into his possession on April 19, 1940, the day on which he purchased it. He remained in the exclusive possession of the

automobile until it was taken from him under the writ of replevin in this suit. The automobile is described in the bill of sale as a Hudson new four-door touring sedan, motor No. 4028753. On April 20, 1940, defendant made application for a certificate of title to the automobile, and a certificate of title was issued to him on April 23, 1940. The application for the certificate was made through G. V. Fletcher, Inc.

Defendant testified that he did not know C. H. Bassett; that he did not know such a person was in existence; that he knew nothing of the Mound City Finance Company, and had no dealings with them, and had no dealings with the Pine Lawn Bank; that he knew nothing of Fletcher's transactions with the Bassetts or the Pine Lawn Bank; that the next day after the car was taken from him under the writ of replevin, he arranged for a bond and secured repossession of the car and had been in possession of it and held the title to it ever since, and was still in possession of it; that the Hudson automobile was on the floor of the showroom when he first looked at it, and when he bought it, it was still there, practically in the same place, and it purported to be a new automobile, and it was a new automobile.

On or about the last of April or the first of May, 1940, Fletcher closed his place of business and disappeared. He has not been heard from since. Later the Bassetts also went away: None of the witnesses knew where they were at the time of the trial.

At the close of the entire case defendant filed his motion for a directed verdict, which was overruled.

Defendant urges error on the part of the trial court in its judgment on the ground that under the law and the evidence the judgment should have been in favor of the defendant.

This being a case tried upon the facts without a jury, we are required to review the case upon both the law and the evidence as in suits of an equitable nature, having in mind that the judgment shall not be set aside unless clearly erroneous, and that due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. [Sec. 114(d), Laws of Missouri, 1943, Mo. Revised Statutes Annotated, Sec. 847.114(d).] Our decision must be arrived at in the light of sections 3513 and 8382, Revised Statutes 1939, Mo. Revised Statutes Annotated, secs. 3513 and 8382.

Section 3513 provides that every sale made by a vendor of goods and chattels in his possession or under his control, unless the same be accompanied by delivery in a reasonable time, regard being had to the situation of the property, and be followed by an actual and continued change of possession of the things sold, shall be held to be fraudulent and void, as against creditors of the vendor, or subsequent purchasers in good faith.

Section 8382 consists of three paragraphs.

Paragraph (a) relates to the transfer of registered motor vehicles.

Paragraph (b) provides that upon the sale of a motor vehicle or trailer by a dealer, the buyer may operate the same for a period of fifteen days after taking possession thereof, provided that during such period such motor vehicle or trailer shall have attached thereto number plates issued to the dealer, and provided further that application for registration shall be made, by mail or otherwise, before such motor vehicle shall be so used.

Paragraph (c) is as follows:

"Certificate of ownership: No certificate of registration of any motor vehicle or trailer, or number plate therefor, shall be issued by the commissioner unless the applicant therefor shall make application for and be granted a certificate of ownership of such motor vehicle or trailer, or shall present satisfactory evidence that such certificate has been previously issued to the applicant for such motor vehicle or trailer. Application shall be made upon a blank form furnished by the commissioner and shall contain a full description of the motor vehicle or trailer, manufacturer's or other identifying number, together with a statement of the applicant's source of title and of any liens or encumbrances on the motor vehicle or trailer. The commissioner shall use reasonable diligence in ascertaining whether the facts stated in such application are true, and, if satisfied that the applicant is the lawful owner of such motor vehicle or trailer, or otherwise entitled to have the same registered in his name, shall thereupon issue an appropriate certificate over his signature and sealed with the seal of his office, procured and used for such purpose. The certificate shall contain a description, manufacturer's or other identifying number, and other evidences of identification of the motor vehicle or trailer, as the commissioner may deem necessary, together with a statement of any liens or encumbrances which the application may show to be thereon. The fee for each original certificate so issued shall be $1.00, in addition to the fee for registration of such motor vehicle or trailer. The certificate shall be good for the life of the motor vehicle or trailer, so long as the same is owned or held by the original holder of the certificate, and shall not have to be renewed annually. It shall be unlawful for any person to operate in this state a motor vehicle or trailer registered under the provisions of the law unless a certificate of ownership shall have been issued as herein provided. In the event of a sale or transfer of ownership of a motor vehicle or trailer for which a certificate of ownership has been issued the holder of such certificate shall endorse on the same an assignment thereof, with warranty of title in form printed thereon, and prescribed by the commissioner, with a statement of all liens or encumbrances on said motor vehicle or trailer, and deliver the same to the buyer at the time of the delivery to him of said motor vehicle or trailer. The buyer shall then present such certificate, assigned as

aforesaid, to the commissioner, at the time of making application for the registration of such motor vehicle or trailer, whereupon a new certificate of ownership shall be issued to the buyer, the fee therefor being $1.00. If such motor vehicle or trailer is sold to a resident of another state or country, or if such motor vehicle or trailer is destroyed or dismantled the owner thereof shall immediately notify the commissioner. Certificates when so signed and returned to the commissioner shall be retained by the commissioner and all certificates shall be appropriately indexed so that at all times it will be possible for him to expeditiously trace the ownership of the motor vehicle or trailer designated therein. It shall be unlawful for any person to buy or sell in this state any motor vehicle or trailer registered under the laws of this state, unless, at the time of the delivery thereof, there shall pass between the parties such certificate of ownership with an assignment thereof, as herein provided, and the sale of any motor vehicle or trailer registered under the laws of this state, without the assignment of such certificate of ownership, shall be fraudulent and void. In the case of dealers, a separate certificate of ownership, either of such dealer's immediate vendor, or of the dealer himself, shall be required in the case of each motor vehicle in his possession, and the commissioner shall determine the form in which application for such certificates of ownership and assignments shall be made, in case forms differing from those used for individuals are, in his judgment, reasonably required: Provided, however, that no such certificates shall be required in the case of new motor vehicles or trailers sold by manufacturers to dealers. Dealers shall execute and deliver bills of sale in accordance with forms prescribed by the commissioner for all new cars sold by them. On the presentation of a bill of sale, executed in the form prescribed by the commissioner, by a manufacturer or a dealer for a new car sold in this state, a certificate of ownership shall be issued. The commissioner shall cooperate with the commissioners or the officials of other states and countries having supervision of the registration of motor vehicles and shall exchange information with them relative to the registration, ownership, sale and theft of motor vehicles, for the purpose of suppressing the stealing and unauthorized use of motor vehicles.''

These sections of the statute must be construed together.

What section 3513 requires for a valid sale of personal property as against creditors of the vendor and subsequent purchasers in good faith is delivery of the chattel in a reasonable time, regard being had to its situation, and actual and continued change of possession. The delivery to and retention by the vendee must be open, notorious, and unequivocal, and such as to apprise the community that the chattel has changed hands and the title has passed out of the seller into the purchaser. The delivery must be real instead of cymbolic or con-

structive if it can be considering the nature and situation of the property. It must be open instead of secret, exclusive in the vendee and not concurrent with the vendor. The change of possession must be actual, not merely formal in trust for the vendee, and continued instead of transient. [Williams v. Youtsey, 151 Mo. App. 69, 131 S. W. 705; Grand Avenue Bank v. St. Louis Union Trust Co., 135 Mo. App. 366, 1. c. 377, 115 S. W. 1071, 1. c. 1075; Reynolds v. Beck, 108 Mo. App. 188, 1. c. 194, 195, 83 S. W. 292.]

Section 8382, paragraph (c), provides that dealers shall execute and deliver bills of sale for all new cars sold by them, and that on the presentation of a bill of sale executed by a dealer for a new car a certificate of ownership shall be issued.

Under these statutes, the bill of sale issued to the Bassetts, unless accompanied by a delivery of possession, was not sufficient for a valid sale against a subsequent purchaser in good faith. The evidence did not satisfactorily show a delivery of possession. On the contrary, there was evidence strongly tending to show that there was no delivery of possession and that no delivery was contemplated or actual sale made. The entire transaction was a mere sham devised for the purpose of purloining $425 from the Pine Lawn Bank.

Of course, the sale of the automobile to the Bassetts not being valid against a subsequent purchaser in good faith, they could not put a mortgage on it that would be valid against such a purchaser. [10 Am. Jur. 791.]

Moreover, the statute does not contemplate that a bill of sale, even when accompanied by a delivery of possession, will be sufficient for a valid sale against a subsequent purchaser in good faith. The issuance of a certificate of title within a reasonable time is essential to accomplish that end. In this case no certificate of title was ever issued, either before or after the mortgage was made.

As between two victims of a fraud-feasor, the law favors the diligent. The negligent and indifferent must bear the loss. [C. I. T. Corporation v. Hume (Mo. App.), 48 S. W. (2d) 154; Edmonson v. Waterston, 342 Mo. 1082, 119 S. W. (2d) 318; Klebbe v. Struempf, 224 Mo. App. 193, 23 S. W. (2d) 205.] In this case the Pine Lawn Bank made the loan when it knew no certificate of title had been issued, and it took no steps to see that an application for a certificate was made and that a certificate was issued. Defendant complied with the law and promptly applied for and secured a certificate of title.

We are not saying that the mortgage in suit here would not be valid as against the mortgagors, or as against a stranger whose possession is that of a mere trespasser. [Rankin v. Wyatt, 335 Mo. 628, 73 S. W. (2d) 764.]

It follows that the judgment of the circuit court should be reversed.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed. *Hughes, P. J.*, and *McCullen* and *Anderson, JJ.*, concur.